# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
## (Miami Civil Division)

| | |
|---|---|
| FRANK E. POLO, SR., ) <br> FP, and HP ) <br>        Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ELEVENTH JUDICIAL CIRCUIT ) <br> COURT OF FLORIDA, ) <br> SCOTT MARCUS BERNSTEIN (in ) <br> his Personal and Official Capacity); ) <br> MARCIA DEL REY (In her ) <br> Personal and Official Capacity) ) <br> ) <br>        Defendant, <br> _____/ | CASE NO: _____ <br><br> FILED BY _____ D.C. <br> OCT 0 8 2021 <br> ANGELA E. NOBLE <br> CLERK U.S. DIST. CT. <br> S. D. OF FLA. - MIAMI <br><br> EMERGENCY PETITION NEEDED BY 4:00 PM OCTOBER 08, 2021. |

## EMERGENCY PETITION FOR EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE, AND MEMORANDUM IN SUPPORT THEREOF.

Plaintiffs, FRANK E. POLO SR., individually and as natural father and next friend for FP, and HP, both minors, files this *Petition For Ex Parte Application for Temporary Restraining Order; Order to Show Cause Why a Preliminary Injunction Should Not Issue, and Memorandum in Support Thereof;* against the defendants, ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, a Government Agency.

The Plaintiffs respectfully move this Court for a preliminary injunction as set out below and for the reasons set out in the accompanying Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction. Fed. R. Civ. P. 65(a).

## THIS IS AN EMERGENCY REQUEST (See §9)

The plaintiffs are the plaintiffs, also, in a Notice of Claims being submitted to the Department of Financial Services in accordance with Fla. Stat. 768.28 (6)(a). Moreover, the

DEFENDANTS, in addition to other non-relevant defendants for the purpose of this motion, are also defendants in the Notice of Claim being submitted to the Department of Financial Services.

## § 1. JURISDICTION, VENUE & STANDING

Jurisdiction is proper in this court under 42 U.S.C. §1983, and under U.S. Code § 1331 for any cause of action arising under the Constitution and Laws of the United States, and this Court has Jurisdiction over all other claims pursuant to 28 U.S.C. § 1367 because all the claims arise from a common nucleus of operative facts that are so intertwined that they cannot be reasonably separated.

Venue is proper under 28 U.S.C. §1391(b) as Defendants are residents of Miami Dade County, which is located in the U.S. Southern District of Florida (this judicial district) and substantial part of the events or omissions giving rise to the claims occurred in Miami Dade County.

All the violations alleged herein occurred in the State of Florida and resulted in injury to the Plaintiffs for which the Plaintiffs are requesting *compensatory damages, punitive damages, special damages, costs of this action, and attorney's fees, pursuant to 42 U.S.C. Sections 1983, Injunctive Relieve and Declaratory Judgement*. Therefore, the Plaintiffs, have "standing" to bring this cause of action.

## § 2. PARTIES

1.  Plaintiff, FRANK E. POLO, SR., individually, (hereinafter "Mr. Polo") and as the next friend to FP, and HP, both minors, (hereinafter, the "Children," and collectively with Mr. Polo, the "Plaintiffs") are residents of Miami Dade County, Florida.

2. At all times relevant herein, the Plaintiffs were a parties in a family case in the Eleventh Circuit Court for Miami Dade Country Case No.: 2012-017787-FC-04 (hereinafter the "Family Case").

3. Defendant, (hereinafter "EJC") is located at 175NW1st Avenue, 30th floor, Miami, FL 33128, and it is one is one of twenty (20) judicial circuits in the Florida State Courts System, a subdivision of the State of Florida.

4. Defendant, SCOTT M. BERNSTEIN, (hereinafter "Judge Bernstein") was a Judge and employee of ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and upon information and belief he is a resident of Miami Dade County, Florida. Judge Bernstein was the presiding judge in abovementioned Family Case from about July 19, 2012, until about January 31, 2018.

5. Defendant, MARCIA DEL REY, (hereinafter "Judge Del Rey") was a Judge and employee of ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA, and upon information and belief she is a resident of Miami Dade County, Florida.

6. At all relevant times, DEFENDANT JUDGE BERNSTEIN was acting under the authority or color of Florida law at the time these claims occurred. Moreover, Mr. Bernstein's acts leading to the damages suffered by the Plaintiffs, were undertaken with a ***clear absence of jurisdiction***.

7. At all relevant times, DEFENDANT JUDGE DEL REY was the judge in the case when the claims include herein occurred. Moreover, Judge Del Rey was acting under the authority and color of Florida law at the time these claims occurred. Furthermore, Judge Del Rey's acts leading to the damages suffered by the Plaintiffs, were undertaken with a ***clear absence of jurisdiction.***

## § 3.<u>TABLE OF CONTENT</u>

**§ 1.   JURISDICTION, VENUE & STANDING** ................................................................ 2

**§ 2.   PARTIES** ................................................................................................................ 2

§ 3.   TABLE OF CONTENT .......................................................................................... 1

§ 4.   TABLE OF AUTHORITIES ................................................................................... 2

§ 5.   INTRODUCTION .................................................................................................. 4

§ 6.   STATEMENT OF FACTS ...................................................................................... 6

§ 7.   ARGUMENT .......................................................................................................... 12

§ 8.   FRANK POLO IS LIKELY TO SUCCEED ON THE MERITS ............................ 14

COUNT I.:   DEPRIVATION OF PLAINTIFFS' ACCESS TO THE COURT WITHOUT DUE PROCESS OF LAW UNDER 42 U.S.C. § 1983 ....................................... 14

COUNT II.:   DEPRAVATION OF ACCESS TO THE COURTS RIGHT WITHOUT DUE PROCESS OF LAW UNDER 42 U.S.C. § 1983 .......................................................... 18

COUNT III.:   DEPRAVATION OF PROPERTY RIGHT WITHOUT DUE PROCESS OF LAW UNDER 42 U.S.C. § 1983 ..................................................................... 19

COUNT IV.:   DEPRAVATION OF ACCESS TO THE COURTS RIGHT WITHOUT DUE PROCESS OF LAW UNDER 42 U.S.C. § 1983 ....................................... 23

COUNT V.:   DEPRAVATION OF ACCESS TO THE COURTS RIGHT WITHOUT DUE PROCESS OF LAW UNDER 42 U.S.C. § 1983 .......................................................... 24

COUNT VI.:   DEPRAVATION OF MR. POLO'S FIRST AMENDMENT RIGHT TO FREE SPEECH AND ASSOCIATION WITHOUT DUE PROCESS OF LAW UNDER 42 U.S.C. § 1983      25

§ 9.   ONGOING VIOLATIONS AND INTENT TO CONTINUE VIOLATING MR. POLO'S AND HIS CHILDREN'S CONSTITUTIONAL RIGHTS...........................................28

§ 10.   MR. POLO IS LIKELY TO SUFFER IRREPARABLE HARM WITHOUT PRELIMINARY RELIEF...........................................................................................31

§ 11.   THE BALANCE OF EQUITIES BETWEEN THE PARTIES SUPPORTS AN INJUNCTION. 32

§ 12.   THE INJUNCTION IS IN THE PUBLIC INTEREST.......................................33

§ 13.   CONCLUSION ...........................................................................34

## § 4. TABLE OF AUTHORITIES

**Cases Law**

*Anderson v . Regents of University of California 22 Cal . App.*30 763 ; 99 Cal . Rptr . 531 ( 1972 ) ..............................................................................................................20

*Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012)...............................................33

*Billings, Cunningham, Morgan PA v. Isom*, 701 SO. 2D 1271 (FLA. 5TH DCA. 1997) ............24

*Bitterman v. Bitterman*, 714 So. 2d 356, 365 (Fla. 1998 .............................................29

*Boddie v. Connecticut*, 401 U.S. 371 at 381 (1971) .....................................................15

*Cate v. Oldham*, 707 F.2d 1176, 1190 (10th Cir. 1983) ..............................................33

*Citizens United v. Federal Election Com'n*, 558 US 310 (2010)...............................28

*De Long v. Hennessey*, 912 F.2D 1144 (9TH CIR. 1990) ....................................... 16, 17

*Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) ................... 32

*Elrod v. Burns*, 427 U.S. 347, 373 (1976) ............................................................. 26, 30

*Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 at 464 (2007) ....... 28

*Goss v. Lopez*, 419 U.S. 565, 574 (1975) ................................................................. 20

*Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) ........................... 33

*Holland v. Tenenbaum*, 360 So.2d 493 (Fla. 4th DCA 1978) ....................................... 24

In re Green, 669 F.2d 779, 781 (D.C.Cir.1981) ......................................................... 17

*In re Oliver*, 682 F.2d 443, 445 (3d Cir.1982) ......................................................... 16

*In re Powell*, 851 F.2d 427, 431 (D.C.Cir.1988) ................................................... 16, 17

*Lankheim v. Florida Atlantic University, BD. of Trustees*, 992 So. 2d 828. (Fla. 4th DCA 2008).

.................................................................................................................. 20

*Lloyd v. Farkash*, 476 So.2d 305, 307 (Fla. 1st DCA 1985) ....................................... 15, 16

*Mitchell v. Moore* 786 So.2d 521 (Fla. 2001) ......................................................... 15

*Moakley v. Smallwood, 826 So. 2d 221 (Fla. 2002)* .................................................. 30

*Moakley*, 826 So. 2d at 227 ................................................................................. 30

*Muniz v. Hoffman*, 422 U.S. 454 (1975) ................................................................. 13

*Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) ........................... 24

*Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir.) ..................................................... 16

*Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) ........................... 14

*Roberts v. LaVallee*, 389 U. S. 40 (1967) ............................................................. 16

*Smith v. Us*, no. 09-14173. Non-argument calendar (11Th Cir. July 9, 2010) ................... 16

*Stockman v. Downs*, 573 So.2d 835, 837-38 (Fla.1991) ............................................. 29

*United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 28 (2d Cir. 1972) ....................... 33

**Statutes**

28 U.S.C. §1391(b) ............................................................................................... 2

Fla. R. App. P. 9.130 .......................................................................................... 12

Fla. Sta. §68.093 ........................................................................................... 15, 17

Fla. Stat §68.093 .............................................................................................. 15

Stat. §61.16 ......................................................................................................... 29

**Constitutional Provisions**

Fla. Const. Article I § 21 .................................................................................... 15

U.S. Const. Amend. I ............................................................................... 13, 26, 31

U.S. Const. Amend. XIV .......................................................................... 13, 15

# § 5.<u>INTRODUCTION</u>

8. The DEFENDANTS SCOTT MARCUS BERNSTEIN; DEFENDANTS ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA; MARCIA DEL REY, are Judges an are employed at the by the DEFENDANT ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA.

9. DEFENDANT SCOTT MARCUS BERNSTEIN is a powerful judge who is the son-in-law ex-president of the Florida Bar, Burton Young. This has given Mr. Bernstein an influential power that he has miss used for years to harass other republican's parents. Using that power and the power vested on Mr. Bernstein by the State of Florida, Mr. Bernstein and his co-conspirators came after Mr. Polo's career in Law and violated multiple constitutional rights.

10. Mr. Polo is an immigrant that escaped from communist Cuba in 1994 in search of freedom.

11. Upon his arrival to this country, Mr. Polo went to college then later dropped college and built a successful career in information technology and international telecommunications.

12. Mr. Polo gave up his career in Telecommunications and sold all his companies telecommunications equipment to be able to go to law school in reasonable reliance on the implied promise of obtaining a law degree from STU if Polo was to complete his course of study.

13. Even though, his English was extremely bad, by the end of 2013 to the beginning of 2014 Mr. Polo returned to college with the objective of going to law school which was his lifelong dream. He made a great sacrifice to keep straight As to improve his GPA and be able to get into Law School. He made the Dean's List every single semester at Miami Dade College. He passed the LSAT, and finally he got admitted into Law School.

14. Mr. Polo was part of a civil family case, in which the mother came after Polo with not even probable cause, but with the intent of retaliating against Mr. Polo for his departure from the relation they had, and other not relevant reasons.

15. Judge Bernstein was a fair judge until he found out that Mr. Polo was republican and that his values were conservative values, especially in what concerns family and marriage.

16. After that a chain of depravations of constitutional rights began with the objectives of attacking Mr. Polo's and his children (1) livelihood, Mr. Polo's (2) degree in Law, (3) the reputation, (4) prestige, and (5) goodwill that having a career in law would represent in Mr. Polo's political career, (5) to inflict severe emotional distress on Mr. Polo, to inflict financial damages to Mr. Polo's family (6) and other damages.

17. To accomplish this Mr. Bernstein and other co-conspirators engaged in illegal activity. The last of Mr. Bernstein's depravations of Mr. Polo's constitutional rights, was sending a letter to ST. Thomas University's (hereinafter "STU") managers with false allegations and containing an illegal order of recusal where Mr. Bernstein was discussing the merits of Mr. Polo's motion of Recusal. STU was conspiring with Mr. Polo to terminate Mr. Polo's career in Law.

18. Judge del Rey, continues violating the access to the Court rights of Mr. Polo in furtherance of the agreement she has with Mr. Bernstein and other co-conspirators (conspiracy is not discussed as a cause of action herein).

19. Mr. Polo is convinced, based on the history of this case, that he will not receive a fair trail on one pending motion which Judge Del Rey has been intentionally delaying for more than 3 years to cause more financial and emotional harm on Mr. Polo.

20. As a result of the acts of the defendants, Mr. Polo suffered damages.

## § 6.STATEMENT OF FACTS

21. Only facts relevant to this petition for preliminary injunction will be presented in this petition. Nevertheless, those are not all pertinent facts of the underline case.

22. Mr. Polo had an implied contract in law with STU, in which Mr. Polo was to pay for STU legal education program, and STU was to confer Mr. Polo a JD, and a Tax Law Certificate. When Mr. Polo was admitted into STU, he had to pay a deposit and thereafter he paid all the fees related to his legal education with STU using Federal Student Loans, he was about to complete not only his JD in Law, but also a Tax Law Certificate.

23. Mr. Polo, in reliance to the Agreement he had with STU, he sold all his business assets to be able to go full time to STU. Then, when Mr. Bernstein interfered with the relation Mr. Polo had with STU, STU breached the agreement he had with Mr. Polo, by terminating Mr. Polo's career 4-6 weeks before graduation, after Mr. Polo had already walked.[1]

24. Segarra noticed a hearing for ***October 24, 2017***, which was noticed as a hearing for "Resolution of Competing Orders Submitted by the Parties." EXHIBIT 4.

25. On ***August 23, 2017***, Mr. Polo saw Mr. Bernstein on the second floor of STU, with multiple members of STU management, including Dean Lawson and Dean Moore.

26. The following day, ***October 24, 2017***, Judge Bernstein took advantage of having Mr. Polo in court for a hearing On, the hearing was held, but the hearing was not so much about competing orders. The hearing was about a list that Mr. Segarra had generated ahead of the hearing, which falsely and misleadingly listed alleged open motions in the docket, which Mr. Segarra claimed to be Mr. Polo's and that Mr. Polo had never acted upon them.

27. Mr. Polo objected to the document as hearsay and surprise because the list was never provided to Mr. Polo head of the hearing. Moreover, Mr. Polo asked for an evidentiary hearing and an opportunity to review the allegations and Bernstein didn't even respond.

28. Judge Bernstein issue and order (hereinafter the "First Vexatious Order") naming Mr. Polo a vexatious litigant, and prevented him from filing any "further pleadings, motions, or

---

[1] Since Tortious Interference with Contract is State Law, will not be discussed herein. Nevertheless, it is applicable in this case also.

letters to the court ...." without "having the same reviewed by a Member of the Florida Bar." *See* EXHIBIT 1.

29. Upon information and believe the Plaintiffs allege that Judge Bernstein, or someone in his office, ordered the Clerk's office not to allow Mr. Polo to file anything, contrary to his order.

30. The first time Mr. Polo tried to file anything, permitted by the order, the filing was rejected.

31. On ***October 2, 2018***, Judge Bernstein entered another order (hereinafter the "Second Vexatious Order") preventing Mr. Polo from filing ANYTHING in the case's docket. *See* EXHIBIT 2.

32. The hearing was **never noticed** as a hearing to remove or alter Mr. Polo access to the court rights. The order was preventing Mr. Polo from filing "anything" in the case's docket. The notice was for an "Order to Show Cause" which was postpone to October 02, 2018. *See* EXHIBIT 5.

33. Mr. Bernstein sent a letter to Dean Lawson with the attached Order of recusal, which contained false allegations saying that Mr. Polo had misrepresented to be a Member of the Florida Bar in his court (trying to say that Mr. Polo represented to be an attorney), that Mr. Polo did not have a reasonable believe to say Mr. Bernstein had ex-parte communication with Mr. Segarra, and that Mr. Polo was, basically, harassing his Judicial Assistant. *See* EXHIBIT 3.

34. What Mr. Polo had said, on the record, was that Mr. Polo was a "Student Member of the Florida Bar" which was true. Moreover, Mr. Polo had a reasonable believe to say Mr. Segarra and Mr. Bernstein had ex-parte communication because Mr. Bernstein on the record told Mr. Polo things that he had say to Mr. Segarra only, in a never publish deposition at that time.[2] Moreover, Mr. Polo never harassed Mr. Bernstein's assistant, and STU had evidence showing that Mr. Polo was not liying.

35. STU, brough up Mr. Polo's political views when Mr. Silver stated to Mr. Polo: "There was a post in your political campaign social media account in which you posted a picture depicting a group of democrats in congress dressing in white, on one side, and another group of

---

[2] It was recently published in preparation to sue.

Nazis dressing in white on the opposite side. Did you try to say that we Democrats are all Nazis?"

36. Upon information and believe, Mr. Polo alleged that after reviewing the voter's registration database, he found that all of them were democrats.

37. In an email to Mr. Silver asking who my accuser was, he told me it was

38. Dean Lawson, Mr. Silver, and Dean Moore used Mr. Bernstein's letter as an excuse to just open the proceeding against Mr. Polo. ("STU's Management" unless otherwise specified) needed to proceed with the plan they had to terminate Mr. Polo's property interest in continued enrollment.

39. Mr. Bernstein's letter was written on the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA letterhead, with Mr. Bernstein's official signature block and signature. Additionally, the letter contained, attached to it, the Order of Recusal, and called for the schools to act upon it. *See* EXHIBIT 3.

40. Mr. Segarra, engaged in providing Dean Lawson, Mr. Silver, and Dean Moore with the evidence they needed to continue with the unconstitutional proceeding.

41. Dean Lawson, Mr. Silver, and Dean Moore, acting as agents of Mr. Bernstein; therefore, acting under color of State Law, commenced and maintained the Honor Council proceeding against Mr. Polo, which was violative of Due Process of Law, and as a result, they terminated Mr. Polo's career in law.

42. Due Process Clause is essentially a guarantee of basic fairness. By not having an impartial adjudicator STU, and Judge Bernstein violated Mr. Polo's property interest in continued enrollment without due process of law. Additionally, Dean Lawson and Dean Moore had already made a decision to terminate Mr. Polo before the meeting.

43. On or about January 18, 2019, Polo's attorney, Mr. Ceballos file a motion to withdraw, which Judge Del Rey granted on or about March 6, 2019 (almost two months later). This was the first hearing in front of Judge Del Rey. *See* EXHIBIT 6.

44. Mr. Polo objected, among other things, as to the constitutionality of leaving Mr. Polo without an attorney when there was a current order preventing Mr. Polo from filing ANYTHING in the docket. Additionally, Mr. Polo asked to get an evidentiary hearing to vacate the two orders

Preventing Mr. Polo from filing. To which Judge Del Rey responded, "Given the history of this Case, I would not vacate the current order on file."

45. Mr. Polo's attorney Mr. Genova filed a motion to withdraw, which Judge Del Rey heard on or about *April 15, 2021*, and she finally granted on *May 5, 2021*.

46. Mr. Polo opposed Mr. Genova's withdrawal on the bases that the Second Vexatious Order dated *October 2, 2018* (the second order), was preventing him access to the court and that the Order is unconstitutional. (See Attached Transcript Exhibit 2 Page 7-9.)

47. Judge Del Rey answer similarly to what she said before by saying "I understand your objection, but I can't keep Mr. Genova working on a case where he feels he can't properly represent you. So, I'm going to grant his motion to withdraw." Id.

48. During the hearing, Polo told the judge: "there is no evidence in the record that shows that my attitude was as egregious as just to prevent me from filing anything in this Court." and Judge Del Rey responded: "Okay. That order predates me. That was my predecessor and that was never appealed. That is a(sic) law of the case. So, at this point in time it's unfortunate, but you have to go find yourself another attorney, okay?" Exhibit 2. Page 9 (9-11).

49. Mr. Segarra knew that Mr. Polo was about to file in Federal court through a Cease-and-Desist letter that Mr. Polo sent to Mr. Segarra's client. Therefore, despite Judge Del Rey Order refusing to remove vacate the October 2, 2018, order, Mr. Segarra drafter a new order which was reinstating the First Vexatious Order, issued on October 24, 2017. EXHIBIT 7. Page 3 (14)

50. Upon information and belief, the plaintiffs allege that after the hearing, the opposing counsel, Mr. Segarra, coordinated with Judge's del Rey behind Mr. Polo's back, after the hearing, to change her holding with a new order (hereinafter the "Third Vexatious Order" with less restrictive language, but still limiting Mr. Polo access the court. EXHIBIT 7. Page 3 (14)

51. Judge del Rey said that she couldn't make Mr. Polo's attorney stay, under Florida Law, a Judge has discretion to prevent an attorney from withdrawing, especially when the client doesn't have the ability to secure another attorney. EXHIBIT 7 P 8 (2-8).

52. Additionally, on that same date, April 15, 2021, Judge Del Rey allowed that Mr. Segarra created a draft of a proposed order to send it to her to be filed as the order of the hearing. (Exhibit 2. P6 (22-25)).

53. The hearing was a hearing for a Motion to Withdraw, which was never noticed as a hearing to change Mr. Polo's access to the court, Mr. Polo was not afforded an opportunity, to prepare for the hearing, to present, evidence, witnesses, or to be heard before the new order was entered. *See* EXHIBIT 9.

54. The new order ("hereinafter the "Third Vexatious Order") signed by Judge Del Rey did not provide sufficiently developed record to show that Mr. Polo was abusing the judicial system and the order was not narrowly tailored to closely fit the specific vice encountered, because no vice was encountered. Moreover, Judge Bernstein was preventing Mr. Polo's right to access the court conditioned on Mr. Polo having the money to pay for an attorney, which Mr. Polo did not have unless he was barrowing money from his wife's credit cards, which Judge del Rey Knew was the case.

55. After the guardian Lilli Real aware of Mr. Polo republican affiliation, Ms. Real, Judge Bernstein, and other co-conspirators began to target Mr. Polo, by first Depriving of multiple constitutional rights without Due Process of Law, including but not limited to those stated in Counts I through VI.

56. On or about June 6, 2018, Mr. Polo registered to run for a State Representative. During the campaign Polo, and thereafter, engaged in core political speech which consisted of speech intended to directly rally public support for fighting judicial corruption in the Miami Dade Family Court System from the State Legislature level, creating thereby interactive communication concerning political change in the court system. Moreover, since the beginning of his campaign, Mr. Polo was an active supporter of President Trump and his political agenda.

57. Upon information and believe the Plaintiffs allege that, most if not all people involved in persecuting Mr. Polo are, or were at the time of events narrated herein, registered members of the Democrat Party. It was not until Mr. Polo ask the Honor Counsel Hearing why they were using Mr. Polo's political views in the hearing, that they change one of the democrat members for one republican that they could manipulate.

58. Ms. Merlin Hernandez (hereinafter Ms. Hernandez) was closely following Mr. Polo's social media, and she reported to Mr. Segarra, and thereby Judge Bernstein, about Mr. Polo's open statements about fighting Judicial Corruption in the Family Court System.

59. Thereafter, Ms. Segarra and Judge Bernstein became more aggressive in coming after Mr. Polo, livelihood, degree in Law, career in law. they entrapped Mr. Polo by taking his constitutional right to access the court knowing that Mr. Polo was indigent and was not going to be able to afford having an attorney to review his filings.

60. Ms. Segarra and Judge Bernstein tried to put Mr. Polo in Jail, they tried to entrap Mr. Polo to commit forgery, to terminate Mr. Polo's custodial rights, violated Mr. Polos constitutional rights (the Plaintiffs adopt herein all facts contained in Counts I through VI). They wanted to intimidate Mr. Polo to make him drop the case he had against Bernstein co-conspirators, to silence Mr. Polo's political speech, and prevent Mr. Polo from holding federal office in the near future.

61. After Polo realized he was being targeted for his political speech, he got intimidated and stop the speech changing the speech to other subjects, but not the corruption in the Family Court System.

62. Then when STU came after Plaintiff's career, Mr. Polo was so intimidated that not only stopped the political speech, but he also dropped the case in the State Court against other co-conspirators.

63. Mr. Polo was excluded from the hearing while the Honor Council was taking testimony of Mr. Juan Carlos Planas, the attorney for Mr. Polo's political rival Maria Elvira Salazar.

64. Upon information and believe, Mr. Polo alleges Mr. Plana had worked for the Florida Department of Elections (hereinafter, "FDE,").

65. Then at about the same time the proceeding was happening, the FDO to commenced proceeding Mr. Polo for certifying that a campaign report was correct and later filing a second amended report with the FDO. They try to get Mr. Polo to incriminate himself with an affidavit they wanted Mr. Polo to sign. The attorneys at the department knew that there was not probable cause to start the proceeding, but they started it anyway. The Florida Elections Commission ruled that there was not probable cause.

66. STU did not tell Mr. Polo that his accuser was Judge Bernstein, but that the proceeding was initiated by Dean Tamara Lawson, who did not have personal knowledge of the facts they were alleging against Mr. Polo.

67. STU prepared a pamphlet with evidence against Mr. Polo, which was not made available to Mr. Polo, which they labeled "Strictly Confidential," which later fell into Mr. Polo's hand. *See* EXHIBIT 3 P 1. The same EXHIBIT 3, shows that the members of the Honor Council knew that Mr. Polo's accuser was Judge Bernstein, and not the Dean of the Students, Ms. Lawson., therefore, they knew they were acting under Color of State Law.

68. STU did not allow an attorney to argue for Mr. Polo.

69. Upon information and believe, the Plaintiffs allege, that Mr. Segarra has been litigating a motion for attorney's fees for over three years without even a reasonable expectation of success, other than the expectancy of violating Mr. Polo's constitutional rights to due process.

## § 7.ARGUMENT

70. Plaintiff incorporates paragraphs 1 through 57 above by reference, as though fully set forth at length herein.

71. The Eleventh Judicial Circuit Court, Judge Del Rey, and Judge Scott Bernstein violated, and continue violating by enforcing the unconstitutional orders that deprives Mr. Polo's constitutional right to access to the Court and Due Process of Law.

72. Fla. R. App. P. 9.130 Stablishes the time an appellant has to file a notice of appeal in the lower court, in this case the 11th Circuit Court which is "within 30 days of rendition of the order to be reviewed." Mr. Polo does not trust the State Judicial System to file a notice of appeal without being found in Criminal contempt or entrapped anyhow, like they have tried before. Judge Del Rey may invoke the Second Order, which she categorized as the Law of the Case, to have an excuse to find Mr. Polo in contempt. The second order prohibit Mr. Polo from filing anything.

73. Likewise, Mr. Polo will be unable to file motion, for rehearing, to compel discovery, motion for temporary attorney's fees, or any other motion needed to participate in a fair proceeding. Mr. Polo does not have the resources to hire an attorney.

74. Judge Del Rey, violated Mr. Polo's constitutional rights of Due Process, access to the Court, U.S. Const. Amend. XIV, and U.S. Const. Amend. 1, by leaving Mr. Polo without representation when she allowed Mr. Ceballos and Mr. Genova to withdraw knowing that Mr. Polo was prohibited by the Second Order to file anything in the docket. (*See* Exhibit 2 P-5 (16-

20). She also refused to vacate the unconstitutional orders (first and Second orders) enjoying Mr. Polo from filing anything in the State Case or putting any restriction on Mr. Polo's access to the court. The two orders were entered without Notice, opportunity to be heard, and without adequate record to support a removing Mr. Polo's access to the court. Therefore, the First, and second orders violate Mr. Polo's access to the court and due process of law rights.

75. Judge Del Rey knows that Mr. Polo cannot afford an attorney, he cannot obtain legal representation, and he cannot even get an attorney to review his documents. It is clear from the record, that Judge Del Rey wants to continue violating Mr. Polo constitutional right to access the court and that she is colluding with Judge Bernstein to continue the retaliation Judge Bernstein initiated to silence Mr. Polo in regard to Mr. Polo's Political speech against the corruption in the family court. *See* Exhibit 2 P.9 (9-11).

76. Judge Del Rey allowed the other side to write and submit an order which totally contradict the order in which she refused to vacate the Second Order preventing Mr. Polo from filing anything. The new order (third Order) preventing Mr. Polo's access to the court was also entered without notice, an opportunity to be heard and adequate record to justify removal of access to the court.

77. Additionally, Mr. Polo has suffered damages to his reputation by the published false allegations contained in Judge Bernstein Order of Recusal. The damages to Mr. Polo's reputation will continue if the 11-JCC (Judge Del Rey) continues making false findings of fact against Mr. Polo as Judge Bernstein did before.

78. Consequently, if not preliminary enjoined, the 11th Circuit Court, will continue the ongoing violation of Frank Polo's right to access the Court, he will suffer unconstitutional violation of his first amendment right, and due process of law. Moreover, since Mr. Polo cannot enter a motion for recusal, or any other motion to litigate his case in State Court, Mr. Polo will not be able to have a just trial when he has a Judge that is willing to continue violating Mr. Polos right to access to the court, freedom of speech, due process of law, and who will be making false findings of fact that will create further reputational damages.

79. TROs "preserve the status quo pending a hearing." *Hoffman v. Int'l Longshoremen's & Warehousemen's Union*, Local No. 10, 492 F.2d 929, 933 (9th Cir. 1974), aff'd sub nom. *Muniz v. Hoffman*, 422 U.S. 454 (1975). That is all Mr. Polo seeks here. Preserving the status quo in the

state case, will allow the resolution of Federal questions contained in this motion while preventing further damages from a legal proceeding that it is maintained to harass, and to infringe in Polo's constitutional rights for expressing himself to rally support against Judicial Corruption in the Eleventh Judicial Circuit Court for Miami Dade County (family division).

80. A motion for a TRO or preliminary injunction requires the Court to make four findings with respect to the Frank Polo as the moving party: that "(1) Polo is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in Polo's favor; and (4) an injunction is in the public interest." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). Here, all four conditions are met and support the preliminary relief requested by Frank Polo.

## § 8.<u>FRANK POLO IS LIKELY TO SUCCEED ON THE MERITS</u>

### COUNT I.:      DEPRIVATION OF PLAINTIFFS' ACCESS TO THE COURT WITHOUT DUE PROCESS OF LAW UNDER 42 U.S.C. § 1983.

81. Plaintiffs re-alleges paragraphs 21 through 69 and further states that DEFENDANTS JUDGE BERNSTEIN did the following:

82. The DEFENDANTS JUDGE BERNSTEIN, in all his actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. § 1983.

83. Mr. Polo is likely to Succeed on the merits in the Sue for Violation of Mr. Polo's Constitutional Rights against Judge Bernstein, Judge Del Rey and the EJC.

84. While it is clear that a litigant's right to access the courts in *<u>civil</u>* cases may be restricted *<u>upon a showing of egregious abuse of the judicial process</u>*. That is not the case in Family Cases. The Florida legislators have, intentionally, leave out Family Law Cases from the application of Fla. Sta. §68.093, due to the increase of Pro Se litigants in Family Courts. Moreover. the Fla. 2d DCA in a case where a judge prevented a Family litigant from filing a notice of appeal and the litigant filed a writ of mandamus, the court stated in Footnote 3 that:

We have observed that G.W.'s disputes with L.M. appear to be associated with a paternity case, governed by the Florida Family Law Rules of Procedure, and he may not qualify for vexatious litigant status. *See* § 68.093(2)(a), Fla. Stat. (2006).

85. Fla. Stat §68.093 defines a vexatious litigant as:

A person as defined in s. 1.01(3) who, in the ***immediately preceding 5-year period***, has commenced, prosecuted, or maintained, pro se, ***five or more civil actions*** in any court in this state, except an action governed by the Florida Small Claims Rules, which actions have been finally and adversely determined against such person or entity; or 2.   Any person or entity previously found to be a vexatious litigant pursuant to this section.

Fla. Stat §68.093(2)(d).

86. Moreover, in Federal courts, in a case where access to the court to indigent was based on the Appellant payment of a fee to file a divorce, the U.S. Sup. Ct. held "that the State's refusal to admit [the] appellants to its courts, the sole mean in Connecticut for obtaining a divorce, must be regarded as the equivalent of ***denying them an opportunity to be heard*** upon their claimed right to a dissolution of their marriages, and, in the absence of a sufficient countervailing justification for the State's action, a denial of due process." *Boddie v. Connecticut*, 401 U.S. 371 at 381 (1971)

87. Additionally, in *Boddie,* the Sup. Ct. held that "a State may not, consistent with the obligations imposed on it by the Due Process Clause of the Fourteenth Amendment, pre-empt the right to dissolve this legal relationship without affording all citizens access to the means it has prescribed for doing so." *Id at 383*.

88. Moreover, the Florida Constitution explicitly secures a constitutional right to access to the court and it stays: "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." Fla. Const. Article I § 21. *See also Lloyd v. Farkash*, 476 So.2d 305, 307 (Fla. 1st DCA 1985) (finding duty to protect access to courts guarantee even greater than when the right is one found by implication from other clauses).

89. In *Mitchell v. Moore* 786 So.2d 521 (Fla. 2001), the Fla. Sup. Ct. held that "the right to access is specifically mentioned in Florida's constitution. See art. I, § 21, Fla. Const. Therefore, it deserves ***more protection than those rights found only by implication***." *Citing Lloyd v. Farkash*,

476 So.2d 305, 307 (Fla. 1st DCA 1985) (finding duty to protect access to courts guarantee even greater than when the right is one found by implication from other clauses)

90. The U.S. Sup. Ct. has previously concluded that their "decisions for more than a decade now have made clear that differences in access to the instruments needed to vindicate legal rights, when ***based upon the financial situation of the defendant***, are repugnant to the Constitution." *Roberts v. LaVallee*, 389 U. S. 40 (1967).

91. In *Smith v. US*, no. 09-14173. Non-argument calendar (11Th Cir. July 9, 2010). The 11th Cir. Ct. Appl. held that "numerous persuasive authorities support the idea that due process requires ***notice and a hearing*** before a court ***sua sponte enjoins a party from filing further papers*** in support of a frivolous claim, and among those cases, the court cite, *De Long v. Hennessey*, 912 F.2D 1144 (9TH CIR. 1990), which is a case that is right on point.

92. In *De Long* the 9th Circuit vacated an order naming a Plaintiff a vexatious litigant when the Plaintiff's due process of law was violated, the record was not ***sufficiently developed*** to show that the Plaintiff was abusing the judicial system, the order did not contain **substantive findings of frivolousness**, and the order ***had no boundaries***.

93. The court in De Long held that they "also recognize that such pre-filing orders [like these orders filed by Judge Bernstein and Judge Del Rey] ***should rarely be filed*****."** *Citing* multiple cases, e.g., *In re Oliver*, 682 F.2d 443, 445 (3d Cir.1982) (an order imposing an injunction "is an extreme remedy, and should be used ***only in exigent circumstances***"); *Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir.) ("***The use of such measures against a pro se plaintiff should be approached with particular caution***."), cert. denied, 449 U.S. 829, 101 S.Ct. 96, 66 L.Ed.2d 34 (1980); *In re Powell*, 851 F.2d 427, 431 (D.C.Cir.1988) (per curiam) (such orders should "***remain very much the exception to the general rule of free access to the courts***") (quoting *Pavilonis*, 626 F.2d at 1079).

94. Moreover, the court acknowledged that a party subject to the imposition of a pre-filing orders, like the kind filed by Judge Bernstein, and Judge Del Rey, must be provide with ***notice and an opportunity to be heard***. *De Long*, 912 F.2D 1144 at 1147. *Citing Oliver*, 682 F.2d at 446 (concluding that the district court has the power to issue such injunctive pre-filing orders in appropriate cases but remanding so that the district court could provide plaintiff with notice and an opportunity to be heard in opposition to the order).

95. Additionally, the court in De Long held that the record must be "**sufficiently developed to show that [Plaintiff] is abusing the judicial system**" Moreover, in De Long gives example of what an adequate record for review should include by holding that:

> An adequate record for review should include a listing of ***all the cases*** and ***motions*** that led the district court to conclude that a ***vexatious litigant order was needed***. See Martin-Trigona, 737 F.2d at 1270-74. At the least, the record needs to show, in some manner, that the ***litigant's activities were numerous or abusive***. See, e.g. Wood, 705 F.2d 1515, 1523, 1526 (35 related complaints filed); Oliver, 682 F.2d at 444 (**over 50** frivolous cases filed, ***which is not the case in the Family State Case***); In re Green, 669 F.2d 779, 781 (D.C.Cir.1981) (per curiam) (over 600 complaints filed).

> *De Long*, 912 F.2D 1144 at 1148.

96. The Court in De Long also found that "it is incumbent on the court to make 'substantive findings as to the ***frivolous or harassing nature of the litigant's actions***.'" *Id* quoting *Powell*, 851 F.2d at 431. Moreover, the court held that to "make such a finding, the district court needs to look at '***both the number and content of the filings as indicia***' of the ***frivolousness of the litigant's claims***." Citing *Powell* at 431.

97. Lastly, the court in De Long found the District Court order had no boundaries and the court held that "[i]f we are to permit pre-filing restrictive orders, these orders must be ***narrowly tailored*** to closely fit the specific ***vice encountered***. See Wood, 705 F.2d at 1523-26 (plaintiff restricted from filing new actions paralleling the issues being litigated in a case and preventing him from relitigating issues decided in two cases).

98. In this case, Fla. Stat §68.093(2)(d) does not apply in family cases, therefore, Mr. Bernstein does not have jurisdiction to impose this kind of sanctions. But if he did, which he doesn't, that is not Mr. Polo's case. Ms. Hernandez, file the family case against Mr. Polo, and Mr. Polo in 2017 file the case against Bernstein's co-conspirators attorneys for taking his children without a court order, when it was his legal timesharing day, without his consent and without probable cause. Fla. Stat §68.093(2)(d). That is not Mr. Polo's case. Ms. Hernandez, file the family case against Mr. Polo, and Mr. Polo in 2017 file the case against Bernstein's co-conspirators attorneys for taking his children without a court order, when it was his legal timesharing day, and without probable cause.

99. Segarra noticed a hearing for ***October 24, 2017***, which was noticed as a hearing for "Resolution of Competing Orders Submitted by the Parties." EXHIBIT 4

100.    On ***October 24, 2017***, the hearing was held, but the hearing was not so much about competing orders. The hearing was about a list that Mr. Segarra had generated ahead of the hearing, which falsely and misleadingly listed alleged open motions in the docket, which Mr. Segarra claimed to be Mr. Polo's and that Mr. Polo had never acted upon them.

101.    Mr. Polo objected to the document as hearsay and surprise because the list was never provided to Mr. Polo head of the hearing. Moreover, Mr. Polo asked for an evidentiary hearing and an opportunity to review the allegations and Bernstein didn't even respond.

102.    Judge Bernstein issue and order (hereinafter the "First Vexatious Order") naming Mr. Polo a vexatious litigant, and prevented him from filing any "further pleadings, motions, or letters to the court …." without "having the same reviewed by a Member of the Florida Bar." of the Florida Bar." *See* EXHIBIT 1.

103.    Judge Bernstein hearing held on August 24, 2017, was never noticed, Mr. Polo was not afforded an opportunity, to prepare for the hearing, to **present witnesses, or to be heard**. EXHIBIT 4.

104.    The First Vexatious Order signed by Judge Bernstein did not provide sufficiently developed record to show that Mr. Polo was abusing the judicial system and the order was not narrowly tailored to closely fit the specific vice encountered, because no vice was encountered. Moreover, Judge Bernstein was depriving Mr. Polo's right to access the court conditioned on Mr. Polo having the money to pay for an attorney, which Mr. Polo did not have unless he was barrowing money from his wife's credit cards, which Bernstein knew was the case.

105.    Moreover, Judge Bernstein, or someone in his office, had ordered the Clerk's office not to allow Mr. Polo to file anything, contrary to his order. The first time Mr. Polo tried to file anything, permitted by the order, the filing was rejected.

106.    Therefore, Judge Bernstein violated Mr. Polo's Federal and Florida State Constitutional Rights to Access the Court, without Due Process of Law.

### COUNT II.:       DEPRAVATION OF ACCESS TO THE COURTS RIGHT WITHOUT DUE PROCESS OF LAW UNDER 42 U.S.C. § 1983

107.     Plaintiffs re-alleges paragraphs 21 through 69 and further states that DEFENDANT JUDGE BERNSTEIN did the following:

108.     The Plaintiffs adopt herein all case law stated in Count I.

109.     The DEFENDANTS JUDGE BERNSTEIN, in all his actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. § 1983.

110.     Mr. Polo is likely to Succeed on the merits in the Sue for Violation of Mr. Polo's Constitutional Rights against Judge Bernstein, Judge Del Rey and the EJC.

111.     On ***October 2, 2018***, Judge Bernstein entered another order (hereinafter the "Second Vexatious Order") preventing Mr. Polo from filing ANYTHING in the case's docket. *See* EXHIBIT 2.

112.     The hearing was **never noticed** as a hearing to remove or alter Mr. Polo access to the court rights. Therefore, Mr. Polo was **not afforded an opportunity, to prepare for the hearing, to present witnesses, or to be heard**. The notice was for an "Order to Show Cause" which was postpone to October 02, 2018. *See* EXHIBIT 5.

113.     The Second Vexatious Order signed by Judge Bernstein did not provide sufficiently developed record to show that Mr. Polo was abusing the judicial system and the order was not narrowly tailored to closely fit the specific vice encountered, because no vice was encountered. Moreover, Judge Bernstein was preventing Mr. Polo's right to access the court conditioned on Mr. Polo having the money to pay for an attorney, which Mr. Polo did not have unless he was barrowing money from his wife's credit cards, which Bernstein knew was the case.

114.     Therefore, Judge Bernstein violated Mr. Polo's Federal and Florida State Constitutional Rights to Access the Court, without Due Process of Law.

## COUNT III.:     DEPRAVATION OF PROPERTY INTEREST WITHOUT DUE PROCESS OF LAW UNDER 42 U.S.C. § 1983

115.     Plaintiffs re-alleges paragraphs 21 through 69 and further states that DEFENDANT JUDGE BERNSTEIN did the following:

116.     The Plaintiffs adopt herein all case law stated in previous Count.

117.     The DEFENDANTS JUDGE BERNSTEIN, in all his actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. § 1983.

118.     Mr. Polo is likely to Succeed on the merits in the Sue for Violation of Mr. Polo's Constitutional Rights against Judge Bernstein, Judge Del Rey and the EJC.

119.     Florida Law recognize that in "student already enrolled at a state college on a state university campus, has a legitimate claim of entitlement to continued enrollment at the school such that she could demand the procedural protections of due process." *Lankheim v. Florida Atlantic University, BD. of Trustees*, 992 So. 2d 828. (Fla. 4th DCA 2008).

120.     Making comments about the merits of a motion to recuse is forbidden by ruling of the Fla. Sup. See *In Re Cohen*, 99 So. 3d 926 (Fla. 2012) (holding that the "disqualification rule, which limits the trial judge to a bare determination of legal sufficiency, was expressly designed to prevent what occurred in this case—the creation of "an intolerable adversary atmosphere" between the trial judge and the litigant") (citation omitted) see also In re Cohen, 99 So. 3d 926 (holding that "Attorneys [litigant in Mr. Polo's case] should not be placed in a position where they ***fear retaliation*** for filing a motion to disqualify" ).

121.     Court have accepted that "by reason of plaintiff's enrollment as a student, there arose a ***contract*** between him and the university may not be questioned." *See Anderson v. Regents of University of California 22 Cal. App.*30 763; 99 Cal . Rptr. 531 (1972).

122.     It is clear that students have a ***property interest*** in their education. *See Dixon v. Alabama St. Bd. of Educ*, 294 F.2d 150 (5th Cir.) (holding that students had a property interest in their continued enrollment at a "public institution of higher learning" *See also Goss v. Lopez*, 419 U.S. 565, 574 (1975). It is clear that students have a property interest in their education and cannot be denied attendance without due process of law.

123.     In this Case: Mr. Polo had an implied contract with STU, and STU breached the contract, while acting under color of law.

124.     Mr. Bernstein, maliciously and in clear absence of all jurisdiction, sent a letter to Dean Lawson, which contained the false allegations and manipulated facts. Dean Lawson, Mr.

Silver, and Dean Moore needed to proceed with the plan they had to terminate Mr. Polo's property interest in their continued enrollment. *See* EXHIBIT 3.

125.    Mr. Polo objected to the proceeding showing Ms. Lawson that Mr. Bernstein was acting illegally, and that he had personal interest in the matter. Even though their own Honor Code says the Council SHALL not be used to resolve personal conflicts, they did not care and continue with the hearing.

126.    Mr. Bernstein sent a letter to Dean Lawson with the attached Order of recusal, which contained false allegations and manipulated facts saying, among other things, that Mr. Polo had misrepresented to be a Member of the Florida Bar in his court (implying that Mr. Polo represented to be an attorney), and that Mr. Polo did not have a reasonable believe to say Mr. Bernstein had ex-parte communication with Mr. Segarra.

127.    Moreover, the record shows that Mr. Bernstein admitted that saying that Mr. Polo represented to be an attorney, would be a misrepresentation; therefore, he change the word attorney by Member of the Florida Bar, which was closer to, Student Member of the Florida Bar.

128.    What Mr. Polo had said, on the record, was that Mr. Polo was a "Student Member of the Florida Bar" which was true. Moreover, Mr. Polo had a reasonable believe to say Mr. Segarra and Mr. Bernstein had ex-parte communication because Mr. Bernstein knew information that Mr. Polo gave to Mr. Segarra only, in a never publish deposition at that time.[3]

129.    Additionally,

130.    Mr. Bernstein's letter was written on the ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA letterhead, with Mr. Bernstein's official signature block and signature. Additionally, the letter contained, attached to it, the Order of Recusal, and called for the schools to act upon it. *See* EXHIBIT 3.

131.    Mr. Segarra, acting on behalf of Judge Bernstein and under color of Law, engaged in providing Dean Lawson, Mr. Silver, and Dean Moore with the evidence they needed to continue with the unconstitutional proceeding.

132.    Dean Lawson, Mr. Silver, and Dean Moore, acting as agents of Mr. Bernstein; therefore, acting under color of state law, commenced and maintained the Honor Council

---

[3] It was recently published in preparation to sue.

proceeding against Mr. Polo, which was violative of Due Process for not having an impartial adjudicator, STU had a burden of proof very high to meet, and they did not meet the standad of proof no even by the preponderance of the evidence, they brough up Mr. Polo's ideology

133.      . The school had a high standard of  when they did not prove anything by the preponderance of the eviden.

134.      As State Actors depriving Mr. Polo of his property interest in their continued enrollment, Dean Lawson, Mr. Silver, Dean Moore, and Mr. Segarra, had to observe and comply with Due Process of Law rules before depriving Mr. Polo of his property interest.

135.      The proceeding did not comply with Due Process of Law. (1) The proceeding was not an adversary proceeding, but an inquisitive proceeding; (2) Mr. Polo was not allowed to have his attorney arguing for him, (2) no subpoena power, (2) no opportunity to confront Mr. Polo's accuser, (3) not opportunity to present witnesses, (4) and no impartial adjudicator. Moreover, the appeal process was a meeting with Dean Lawson and Dean Moore and not a formal hearing as required by due process of law. Additionally, Dean Lawson and Dean Moore had already made a decision to terminate Mr. Polo before the meeting.

136.      Mr. Bernstein influential power as the son of the ex-president of the Florida Bar, Burton Young and the power vested on Judge Bernstein by the State of Florida were misused when Mr. Bernstein and his co-conspirators came after Mr. Polo's career in Law., by carefully preparing a motion of recusal in which he discussed the merits of Mr. Polo's motion to recuse.

137.      But for Judge Bernstein's act of sending the letter to STU, and colluded with STU management, that unconstitutional proceeding had never taken place, and Mr. Polo had never lost his property interest in his continued enrollment in law school and suffer damages as consequence thereof.

138.      But for the acts of Dean Lawson, Mr. Silver, Dean Moore, and Mr. Segarra who decided to institute, maintain, and continue the proceeding without providing Mr. Polo Due Process of Law before Depriving him of his property interest, Mr. Polo had never lost his Law Degree without Due Process of Law.

139.      Therefore, Judge Bernstein violated Mr. Polo's Federal and Florida State Constitutional property interest to his degree, without Due Process of Law.

## COUNT IV.:   DEPRAVATION OF ACCESS TO THE COURTS RIGHT
## WITHOUT DUE PROCESS OF LAW UNDER 42 U.S.C. § 1983

140.     Plaintiffs re-alleges paragraphs 21 through 69 and further states that DEFENDANTS JUDGE DEL REY did the following:

141.     The Plaintiffs adopt herein all case law stated in Count I.

142.     The DEFENDANTS JUDGE DEL REY, in all his actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. § 1983.

143.     Mr. Polo is likely to Succeed on the merits in the Sue for Violation of Mr. Polo's Constitutional Rights against Judge Bernstein, Judge Del Rey and the EJC.

144.     On or about *January 18, 2019*, Polo's attorney, Mr. Ceballos file a motion to withdraw, which Judge Del Rey granted on or about March 6, 2019 (almost two months later). This was the first hearing in front of Judge Del Rey. *See* EXHIBIT 6.

145.     Mr. Polo objected, among other things, as to the constitutionality of leaving Mr. Polo without an attorney when there was a current order preventing Mr. Polo from filing ANYTHING in the docket. Additionally, Mr. Polo asked to get an evidentiary hearing to vacate the two orders Preventing Mr. Polo from filing. To which Judge Del Rey responded, "Given the history of this Case, I would not vacate the current order on file."

146.     As previously stated, the Second Vexatious Order signed by Judge Bernstein did not provide sufficiently developed record to show that Mr. Polo was abusing the judicial system and the order was not narrowly tailored to closely fit the specific vice encountered, because no vice was encountered. Moreover, Judge Bernstein was preventing Mr. Polo's right to access the court conditioned on Mr. Polo having the money to pay for an attorney, which Mr. Polo did not have unless he was barrowing money from his wife's credit cards, which Judge Del Rey knew was the case.

147.     Therefore, Judge Del Rey left Mr. Polo without access the court violating Mr. Polo's Federal and Florida State Constitutional Rights to Access the Court without Due Process of Law.

## COUNT V.:     DEPRAVATION OF ACCESS TO THE COURTS RIGHT
## WITHOUT DUE PROCESS OF LAW UNDER 42 U.S.C. § 1983

148.     Plaintiffs re-alleges paragraphs 21 through 69 and further states that DEFENDANTS JUDGE DEL REY did the following:

149.     The Plaintiffs adopt herein all case law stated in Count I.

150.     The DEFENDANTS JUDGE DEL REY, in all his actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. § 1983.

151.     Under Florida Law, a Judge has discretion to prevent an attorney from withdrawing, especially when the client doesn't have the ability to secure another attorney. *See Billings, Cunningham, Morgan PA v. Isom*, 701 SO. 2D 1271 (FLA. 5TH DCA. 1997). *See also Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986); *Pantori v. Stephenson*, 384 So.2d 1357 (Fla. 5th 1273*1273 DCA 1980); *Holland v. Tenenbaum*, 360 So.2d 493 (Fla. 4th DCA 1978).

152.     In this Case, Mr. Polo's attorney Mr. Genova filed a motion to withdraw, which Judge Del Rey heard on or about ***April 15, 2021***, and she finally granted on ***May 5, 2021***.

153.     Mr. Polo opposed Mr. Genova's withdrawal on the bases that the Second Vexatious Order dated ***October 2, 2018*** (the second order), was preventing him access to the court and that the Order is unconstitutional. (See Attached Transcript Exhibit 7 Page 7-9.)

154.     Judge Del Rey answer similarly to what she said before by saying "I understand your objection, but I can't keep Mr. Genova working on a case where he feels he can't properly represent you. So, I'm going to grant his motion to withdraw." Id.

155.     During the hearing, Polo told the judge: "there is no evidence in the record that shows that my attitude was as egregious as just to prevent me from filing anything in this Court." and Judge Del Rey responded: "Okay. That order predates me. That was my predecessor and that was never appealed. That is a(sic) law of the case. So, at this point in time it's unfortunate, but you have to go find yourself another attorney, okay?" Exhibit 7. Page 9 (9-13).

156.     Mr. Segarra knew that Mr. Polo was about to file in Federal court through a Cease-and-Desist letter that Mr. Polo sent to Mr. Segarra's client. Therefore, despite Judge Del

Rey Order refusing to remove vacate the October 2, 2018, order, Mr. Segarra drafter a new order which was reinstating the October 24, 2017, order. EXHIBIT 7. Page 3 (14).

157.     Upon information and belief, after the hearing, the opposing counsel, Mr. Segarra, coordinated with Judge's del Rey behind Mr. Polo's back, after the hearing, to change her holding with a new order (hereinafter the "Third Vexatious Order" with less restrictive language, but still limiting Mr. Polo access the court. EXHIBIT 7. Page 3 (14)

158.     Judge del Rey said that she couldn't make Mr. Polo's attorney stay, under Florida Law, a Judge has discretion to prevent an attorney from withdrawing, especially when the client doesn't have the ability to secure another attorney. EXHIBIT 7 P 8 (2-8).

159.     Additionally, on that same date, April 15, 2021, Judge Del Rey allowed that Mr. Segarra created a draft of a proposed order to send it to her to be filed as the order of the hearing. (Exhibit 2. P6 (22-25)).

160.     The hearing was a hearing for a Motion to Withdraw, which was never noticed as a hearing to change Mr. Polo's access to the court, Mr. Polo was not afforded an opportunity, to prepare for the hearing, to present, evidence, witnesses, or to be heard before the new order was entered.

161.     The new order ("hereinafter the "Third Vexatious Order") signed by Judge Del Rey did not provide sufficiently developed record to show that Mr. Polo was abusing the judicial system and the order was not narrowly tailored to closely fit the specific vice encountered, because no vice was encountered. Moreover, Judge Bernstein was preventing Mr. Polo's right to access the court conditioned on Mr. Polo having the money to pay for an attorney, which Mr. Polo did not have unless he was barrowing money from his wife's credit cards, which Judge del Rey Knew was the case.

162.     Therefore, Judge Del Rey left Mr. Polo without access the court violating Mr. Polo's Federal and Florida State Constitutional Rights to Access the Court without Due Process of Law.

## COUNT VI.:     DEPRAVATION OF MR. POLO'S FIRST AMENDMENT RIGHT TO FREE SPEECH AND ASSOCIATION WITHOUT DUE PROCESS OF LAW UNDER 42 U.S.C. § 1983

163.     Plaintiffs re-alleges paragraphs 21 through 69 and further states that DEFENDANTS JUDGE BERNSTEIN, and JUDGE DEL REY did the following:

164.     The Plaintiffs adopt herein all case law stated in Count I.

165.     The DEFENDANTS JUDGE BERNSTEIN, and JUDGE DEL REY, in all his actions described in this complaint deprived the Plaintiff(s) of his/their rights under Color of State Law directly in violation of 42 U.S.C. § 1983.

166.     The Supreme Court has made clear that ""The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

167.     After the guardian Lilli Real aware of Mr. Polo republican affiliation, Ms. Real, Judge Bernstein, and other co-conspirators began to target Mr. Polo, by first Depriving of multiple constitutional rights without Due Process of Law, including but not limited to those stated in Counts I through VI.

168.     On or about June 6, 2018, Mr. Polo registered to run for a State Representative. During the campaign Polo, and thereafter, engaged in core political speech which consisted of speech intended to directly rally public support for fighting judicial corruption in the Miami Dade Family Court System from the State Legislature level, creating thereby interactive communication concerning political change in the court system. Moreover, since the beginning of his campaign, Mr. Polo was an active supporter of President Trump and his political agenda.

169.     Ms. Merlin Hernandez (hereinafter Ms. Hernandez) was closely following Mr. Polo's social media, and she reported to Mr. Segarra, and thereby Judge Bernstein, about Mr. Polo's open statements about fighting Judicial Corruption in the Family Court System.

170.     Thereafter, Judge Bernstein and Ms. Segarra became more aggressive in trying to silence Mr. Polo.

171.     To accomplish their objectives or silencing Mr. Polo, Judge Bernstein and Ms. Segarra continue to force Mr. Polo to pay Mr. Segarra to harass Mr. Polo with a deposition that had no other objective than to harass Mr. Polo.

172.     Judge Bernstein and Ms. Segarra knew Mr. Polo was indigent and unable to afford an attorney to review his filings or was going to have to incur more debt to be able to

afford the legal proceeding. Nevertheless, Judge Bernstein and Ms. Segarra continue to harass Mr. Polo.

173.    Judge Bernstein and Ms. Segarra tried to put Mr. Polo in Jail, for filing a motion to recuse despite knowing that Mr. Polo's did not have the requisite intent to be in contempt.

174.    Judge Bernstein and Ms. Segarra maliciously colluded with STU, for over a year, to finish Mr. Polo's career in law, and STU wrongly terminated Mr. Polo.

175.    Mr. Polo to commit forgery by sending Ms. Kathia Camacho (the court reporter) to ask Mr. Polo to sign a court report as her, with the purpose of putting Mr. Polo in Jail and terminate Mr. Polo's custodial rights, like everything else, without due process of law.

176.    Judge Bernstein and Ms. Segarra violated Mr. Polos constitutional rights (the Plaintiffs adopt herein all facts contained in Counts I through VI). They wanted to intimidate Mr. Polo to make him drop the case he had against other co-conspirators, to silence Mr. Polo's political speech, and prevent Mr. Polo from holding federal office in the near future.

177.    After Polo realized he was being targeted for his political speech, he got intimidated and stop the speech changing the speech to other subjects, but not the corruption in the Family Court System.

178.    Judge Bernstein and Ms. Segarra colluded with STU, so that Bernstein was going to provide STU with the needed false allegations of misconduct, and Segarra was going to provide STU with misleading evidence.

179.    Then STU unjustly made Mr. Polo to go through an Honor Code proceeding, in which point Mr. Polo felt even more intimidated; therefore, not only he stopped the political speech, but he also dropped the case in the State Court against other co-conspirators.

180.    STU, brough up Mr. Polo's political views when Mr. Silver stated to Mr. Polo: "There was a post in your political campaign social media account in which you posted a picture depicting a group of democrats in congress dressing in white, on one side, and another group of Nazis dressing in white on the opposite side. Did you try to say that we Democrats are all Nazis?"

181.    Silver, and the other co-conspirators force Mr. Polo to go through a proceeding where all members of the hearing panel were registered Democrats.  Once Polo asked how his

political post was relevant in the preceding, they change one of the members by a Republican they could manipulate.

182.    First amendment is a fundamental constitutional right, which violations thereof is subject to strict scrutiny standard. *See*

> (holding that political speech must prevail against laws that would suppress it by design or inadvertence. Laws burdening such speech are subject to strict scrutiny, which requires the *Government to prove that the restriction "furthers a compelling interest and is narrowly tailored to achieve that interest."*
>
> *Citizens United v. Federal Election Com'n*, 558 US 310 (2010) (quoting *Federal Election Commission v. Wisconsin Right to Life, Inc.,* 551 U.S. 449 at 464 (2007)

183.    Clearly, any reasonable person under the circumstances, had stop

## § 9.ONGOING VIOLATIONS AND INTENT TO CONTINUE VIOLATING MR. POLO'S AND HIS CHILDREN'S CONSTITUTIONAL RIGHTS

184.    Plaintiffs re-alleges paragraphs 21 through 69 and further states that DEFENDANTS MR. SEGARRA, and JUDGE DEL REY did the following:

185.    As previously stated, DEFENDANT JUDGE DEL REY IS forcing Mr. Polo to continue litigating without access to the court, based on an order that was never noticed, Mr. Polo was not afforded an opportunity to be heard, and which did not provide sufficiently developed record to show that Mr. Polo was abusing the judicial system and the order was not narrowly tailored to closely fit the specific vice encountered, because no vice was encountered.

186.    Mr. Segarra, with the help of Ms. Del Rey, have kept two open motions in the system for more than three years, and they have both continue to harass Mr. Polo giving Mr. Polo never ending and repetitive hearings, repetitive referrals to the General Magistrate, and 15 minutes hearing 2 to 5 month down the road, when in other cases, Ms. Del Rey give the same kind of hearing, in the same date period, 15 to 20 days down the road.

187.    Pending is the other side's "Motion for Attorney's fees" for which Mr. Polo filed a motion to dismiss, and there was a hearing on a motion to dismiss, which Ms. Del Rey denied with no other objective than to continue inflicting harm on Mr. Polo.  (*See* history of violations in COUNTS I through VI).

188.     Florida law is very clear about attorney's fees in family cases. Those can be obtained in one of three ways: (1) contractual, (2) Statutory under 61.16 (under Rosen), (3) and under "Inequitable Conduct Doctrine" under Mogley or Bitterman.

189.     (1) Under the active Agree Final Judgment, there are not provision of prevailing party for which they can request attorney's fees. *See* EXHIBIT 12 P 4 (8)  Which stays, Each Party shall pay his/her own attorney's fees. Hence, they cannot obtain attorneys fees under contractual obligation.

190.     (2)Under the statutory provision of Fla. Stat. §61.16, (Rosen is an interpretation of 61.16). They cannot use this provision, because under *Stockman v. Downs*, 573 So.2d 835, 837-38 (Fla.1991)the Fla. Sup. Ct. has been very clear in stating that:

> [A] claim for attorney's fees, whether based on statute or contract, must be pled. The fundamental concern is one of notice. Modern pleading requirements serve to ***notify the opposing party*** of the claims alleged and prevent ***unfair surprise***. Raising entitlement to attorney's fees ***only after judgment fails to serve either of these objectives***. The existence or nonexistence of a motion for attorney's fees may play an ***important role in decisions*** affecting the case.... A party should not have to speculate throughout the entire course of an action about what claims ultimately may be alleged against him. Accordingly, we hold that a claim for attorney's fees, whether based on statute or contract, must be pled. Failure to do so constitutes a waiver of the claim.

*Stockman v. Downs,* 573 So.2d 835, 837-38 (Fla.1991).

191.     In this case, the other side filed their Response to the Original petition on March 14, 2017, but they failed to ask for attorney's fees. *See* EXHIBIT 11.

192.     Moreover, the *Order on Recommended Order of General Magistrate* (final Judgement) was entered on September 14, 2018, and Mr. Segarra filed his motion for attorney's fees on October 08, 2018.  Consequently,

193.     (3) The last form to get Attorney's fees, is under the "Inequitable Conduct Doctrine." (*Moakle & Bitterman*)

194.     *Bitterman v. Bitterman*, 714 So. 2d 356, 365 (Fla. 1998 ("The inequitable conduct doctrine permits the award of attorney's fees where one party has exhibited ***egregious conduct or acted in bad faith***."). Further, "the amount of the award of attorneys' fees must be directly related

to the attorneys' fees and costs that the opposing party has incurred as a result of the ***specific bad faith conduct***.

195.        Moreover, in *Moakley v. Smallwood 826 So. 2d 221 (Fla. 2002)*, the court concluded that "the trial court's exercise of the inherent authority to assess attorneys' fees against an attorney must be ***based upon an express finding of bad faith conduct and must be supported by detailed factual findings describing the specific acts of bad faith conduct that resulted in the unnecessary incurrence of attorneys' fees***." *Moakley*, 826 So. 2d at 227.

196.        There is not evidence on the record, that shows any express finding of bad faith conduct supported by detailed factual findings describing the specific acts of bad faith. Nevertheless, Mr. Segarra keeps saying that he is going to present evidence. Seemly, he plans on litigating by consent after the final judgment was entered, and that is not a choice for him.

197.        The case was already disposed of over a year ago, therefore, there is not possible way for Mr. Segarra to get a second bite of the apple, unless GM Singer, who also violated Polo's children's constitutional right, and is willing to do it once more.

198.        Consequently, Mr. Segarra has been litigating all this time, with the sole purpose of harassing Mr. Polo, with the intent to harm the Mr. Polo and his children which he accomplished.

199.        Moreover, The other side asked for a Case Management Hearing, on pending order on Mr. Polo's *Motion to Vacate Order Affirming GM Report* which was schedule for October 6, 2021, at ***1:30 PM*** to address pending order on Mr. Polo's *Motion to Vacate Order Affirming GM Report*. *See* EXHIBIT 13.

200.        On ***September 14, 2021***, Judge Del Rey entered an order granting Mr. Polo's *Motion to Vacate Order Affirming GM Report*. *See* EXHIBIT 14.

201.        On October 6, 2021, at 12:28 PM (***Before the Hearing***), Judge Del Rey entered another order denying Mr. Polo's *Motion to Vacate Order Affirming GM Report*. which vacates the previous order without a notice, hearing, an opportunity to be heard.

There is a hearing schedule for October 12, 2021, in which Mr. Segarra (the other side's attorney) seems to be planning to re-litigate matters that were supposed to be litigated before the final hearing, and due to the history of the case, Mr. Polo is convinced that GM Singer will grant

the attorney's fees which are no supported by law or facts. *See* §9. Ongoing Violations and Intent to Continue.

202.

### § 10.   MR. POLO IS LIKELY TO SUFFER IRREPARABLE HARM WITHOUT PRELIMINARY RELIEF.

203.         Plaintiffs re-alleges paragraphs 21 through 69 and further states that:

204.         If his court does not grant the TOR and later the Preliminary injunctions, Mr. Polo will suffer irreparable harm.

205.         The Supreme Court has made clear that ""The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

206.         In this case, Mr. Polo was targeted by the 11-JCC and Judge Bernstein acting on behalf of the 11-JCC and they retaliated, among for Mr. Polo's political believes, party affiliation and Mr. Polo's engagement in Political speech. That retaliation intimidated Mr. Polo and Mr. Polo had to refrain from engaging in speech designed to rally public support on fighting the Judicial Corruption in Family Court. Now, Mr. Polo is engaging in such activity once more and he will run for U.S. Congress once more on the same premises of changing the laws in Family court to prevent the abuse and corruption in family courts. Mr. Polo believes that he has the right to stand up for what is right in defense, not only of his own rights, but the rights of other parents who have approached Mr. Polo concerned about the corruption in the Miami Dade Family Court.

207.         The retaliatory history of the 11th Circuit against Mr. Polo is not covered in full here, because this is not the subject of this petition. Nevertheless, it important to resalt that the 11th Circuit Court has tried in numerous occasions to put Mr. Polo in Jail to, illegally and unconstitutionally, end Mr. Polo's parental rights. Additionally, the 11th Circuit court continues to make financially impossible for Mr. Polo to obtain any legal relief in State Court. Moreover, they continue to harass Mr. Polo with two motions which are kept with no other objective than to harass Mr. Polo, to silence him and retaliate against him for his political speech against the

corruption in the Family Court, and the court systematically continue violating his constitutional access to the court and due process right.

208.     First, at this moment Mr. Polo does not have the resources to hire a new attorney and the FIU, the public defendant office, and the State Attorney's office have failed in the past to serve Mr. Polo with legal representations. Moreover, the last decision of Judge Del Rey, clearly makes clear that Judge Del Rey, thereby the 11th Circuit Court, is willing to continue violating Polo's constitutional right in retaliation for Mr. Polo's Engagement in Political Speech, as judge Bernstein did before.

209.     Second, Mr. Polo has already suffered damages to his reputation, and will suffer more damages if the Eleventh Judicial Circuit keeps violating Mr. Polo's rights and making false findings of facts in the public record that can be assume by the general public to be true.

210.     Lastly, if this Court do not act, the Eleventh Judicial Circuit Court will continue violating Mr. Polo's constitutional rights to Due Process, Freedom of Speech, Access to the Courts, and that would be an irreparable harm because he would have to stop engaging in Political Speech once more to avoid further retaliation, he will have to suffer violations of his access to the court, and due process, which are irreparable harm.

## § 11.     THE BALANCE OF EQUITIES BETWEEN THE PARTIES SUPPORTS AN INJUNCTION.

211.     Plaintiffs re-alleges paragraphs 21 through 69 and further states that:

212.     The Preliminary Relief Will Not Impose an Undue Burden on Ms. Hernandez who is the Plaintiff in the State case.

213.     Like I previously said, "It is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). Moreover, the public confidence in the judicial system is at stake. The Eleventh Judicial Circuit is acting as a  Criminal Enterprise in which many people in Miami don't trust.

214.     Ms. Hernandez, through her attorney, the Court, and my own attorneys, have been delaying the resolution of two simple motions since 2018 (3 years ago) and up to now,

Hernandez and her attorney have not demonstrated a true interest in resolving this matter. Mr. Polo is certain that the Federal Judicial System will not take three years to resolve two motions for attorney's fee for which they are not entitle, but for the act of the criminal enterprise ran from the Eleventh Judicial Circuit Court (family Division).

215.    Moreover, in balancing Ms. Hernandez harm (waiting a little bit longer) with the harm that Mr. Polo will suffer if this injunction is not granted, it is clear that Mr. Polo will be the prejudiced party who will suffer grave constitutional violations, as he has up to today, if this injunction is not granted. Moreover, there is nothing more important than the trust in the Judicial System, and this Court can help those, like Mr. Polo, who still believe there must be justice somewhere in the judicial system, and to obtain that justice, he is looking for refuge in our constitution and the Federal judicial system.

## § 12.    THE INJUNCTION IS IN THE PUBLIC INTEREST.

216.    Plaintiffs re-alleges paragraphs 21 through 69 and further states that:

217.    The request injunction is in the Public Interest.

218.    The Tenth Circuit has recognized that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (quoting *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012)). The Tenth Circuit has particularly recognized a "strong public interest in protecting First Amendment values." *Cate v. Oldham*, 707 F.2d 1176, 1190 (10th Cir. 1983).

219.    The public's interest in preventing Defendants from continuing to perpetrate their continuous violations of constitutional rights far outweighs any private interest Defendants may have in continuing to perpetrate it. Defendants "have no vested interest in a business activity found to be illegal." *United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 28 (2d Cir. 1972)(citation and quotation omitted).

220.    In this case, Mr. Polo, as an independent citizen who ran for office and will run again in 2022. Mr. Polo in 2018 engaged in protected speech to promote and create awareness about the necessity and importance of ending corruption in the family court by removing excess of discretion granted under statutory law. It is clearly in the public interest to protect plaintiffs' right to engage in political speech to bring awareness of social issues like the corruption in the

family court in Miami Dade County. Otherwise, any politician that has a case pending in the 11-JCC would have to refrain, afraid of retaliation, from promoting the public interest policies that he proposes for when he is in office.

221.     Additionally, as previously expressed, the 11th Circuit Court has prevented Mr. Polo from accessing the courts without proper notice, a hearing on the merits, and without proper finding on of fact and law to support a finding of vexatious litigant. Moreover, the Defendants deprived Mr. Polo of a property interest in his continued enrollment.

222.     Therefore, having the Eleventh Judicial Circuit Court and all its officers, employees, lawyer, Judges, General Magistrates, and agents injuncted until the **sue for declaratory judgment** is concluded in this Court is in the public interest.

## § 13.     CONCLUSION

**WHEREFORE:** For all facts and legal arguments contained herein, the Plaintiffs respectfully ask this court to issue *ex parte* the attached proposed TRO  and required Defendant ELEVENTH JUDICIAL CIRCUIT COURT *Why a Preliminary Injunction Should Not Issue* against the Eleventh Circuit Court, its agents, attorneys, employees, and lawyers preventing them from continuing proceedings against Mr. Polo.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the forgoing *Emergency Plaintiff's Memorandum in Support Of Ex Parte Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, Memorandum in Support Thereof,* will be served on the defendant ELEVENTH JUDICIAL CIRCUIT COURT OF FLORIDA.


ELEVENTH JUDICIAL CIRCUIT COURT
OF FLORIDA
DEFENDANT
Chief Judge Nushin G. Sayfie

Lawson E. Thomas Courthouse
Room: CHC 3045
175 N.W. 1st AVE ,
Miami, FL 33128

By: _____
PLAINTIFF
Frank Polo
9411 Fontainebleau Blvd. Apt 212
Miami, FL. 33172
Phone: 305-901-3360
E-Mail: Frank.Polo@msn.com