FRANK E. POLO, SR.,                    )

FP, and HP                             )

      Plaintiff,

                     )      CASE NO:____21-CV-23557_____/

   v.                )

                     )

ELEVENTH    JUDICIAL            )

CIRCUIT   COURT   OF           )

FLORIDA, et al.                        )

                     )

     Defendant,                        )

_____/            )

                     )

**FILED BY ___ JAS ___ D.C.**

**NOV 10 2021**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE REPORT AND RECOMMENDATIONS

Pursuant to Fed. R. Civ. P. 72(b) and Local Rule 4(b), plaintiffs object to the Magistrate Judge's Report and Recommendations ("R&R") (ECF No.13) filed on November 2, 2021, and further states:

The General Magistrate erred in recommending that the Petition for ex parte Application for Temporary Restraining Order [ECF No. 11] be DISMISSED and Motion for Leave to Proceed in forma pauperis. [ECF No. 5] be DENIED for the reasons set forth below:

### § 1.STANDARD OF REVIEW

"Rule 53 (e) provides that, in nonjury cases referred to a master, the court shall accept any finding of fact that is not clearly erroneous. Under the reference in this case, however, the judge remains free to give the magistrate's recommendation whatever weight the judge decides it merits." *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976).

Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The Court is charged with making a *de novo* determination of those portions of the Report and Recommendations ("R & R) to which specific objection is made. A judge of the court may accept,

i

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

## TABLE OF CONTENTS

§ 1.   STANDARD OF REVIEW ................................................................ i

§ 2.   RESPONSE ................................................................................. 1

§ 3.   CONCLUSION ........................................................................... 19

§ 4.   CERTIFICATE OF SERVICE ...................................................... 20

## CASES LAW

*Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir.2002) ........................................... 18

*Dennis v. Sparks,* 449 US 24 (1980) ............................................................ 12

*Elrod v. Burns*, 427 U.S. 347, 373 (1976) ...................................................... 4

*Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) ....................... 1

*Lippman v. City of Miami*, 719 F.Supp.2d 1370, 1374 (S.D.Fla.2010) ................... 19

*Los Angeles v. Lyons*, 461 US 95 (1983) ....................................................... 6

*Massachusetts Delivery Ass'n v. Coakley*, 671 F. 3d 33 (1st Cir. 2012) ................. 7

McCain v. Fla. Power Corp., 593 So.2d 500, 502 (Fla. 1992) ............................... 11

*Mitchum v. Foster*, 407 U. S. 225 (1972) ...................................................... 5

*Monroe v. Pape*, 365 U.S. 167 (1961) ......................................................... 21

*Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir.1987).................................... 19

*Osterback v. Kemp*, 300 F. Supp. 2d 1238 (Fla. ND 2003) ............................... 18

*Papasan v. Allain*, 478 U.S. 265, 277-78, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) ...................... 2

*Pulliam v. Allen*, 466 U.S. 522 (1984) ............................................................................... 2

*Pulliam v. Allen*, 466 US 522 (1984) ........................................................................ 1, 2, 3

Ruiz v. Tenet Hialeah Health System, 260 So. 3d 977 at 982 (Fla. 2018) ................................... 10

Stahl v. Metro. Dade Cty., 438 So.2d 14, 21 (Fla. 3d DCA 1983) ........................................... 10

*Tower v. Glover*, 467 U.S. 914, 920 (1984) ................................................................... 12

*United States v. Classic*, 313 US 299, 326 (1941) .......................................................... 8

*United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 29 (2nd Cir. 1972) ..................................... 7

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989).... 14

*Wells v. Miller*, No. 15-CV-80412, 2015 WL 12953101 ............................................... 5

*Younger v. Harris*, 401 U.S. 37 (1971) ..................................................................... 5, 7

## STATUTES

28 U. S. C. § 2283 .............................................................................................. 5, 6

28 U.S.C. § 1367 ................................................................................................... 21

28 U.S.C. § 636 ..................................................................................................... 2

42 U.S.C. § 1983 ............................................................................................. passim

## RULES

Fed. R. Civ. P. 72 .................................................................................................. 1

Local Rule 4 ........................................................................................................ 1

## § 2. RESPONSE

### MR. POLO RESPECTFULLY BELIEF THAT THE MAGISTRATE JUDGE ERRED IN RECOMMENDING THE MOTION TO BE "DISMISS" AND THE PETITION TO BE "DENIED"

1.  Plaintiff in this case, is seeking ***prospective injunctive relief***, against the Eleventh Judicial Circuit court of Florida, Judge Bernstein, Judge Del Rey, and General Magistrate Robert R. Singer (hereinafter ("MG Singer"). Additionally, plaintiff seeks, not to enjoin the state court proceeding, but to stay the proceeding until this court hears the underline causes of actions motivating the petition for preliminary injunction. The plaintiff does not ask for this court to declare the whole proceedings in state court unconstitutional. Plaintiff was asking to declare the orders unconstitutional, but now he understand that under *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) only prospective relief is allowed, Mr. Polo will retire the request for past acts to be declare unconstitutional, and request this court to grant preliminary relieve until the case is heard by the jury or other resolution is reached. Please, advise if amendment is necessary.

2.  In regard to Claims I, II, IV, V and VII, the Magistrate Judge asserts that "Plaintiff is not entitled to monetary damages for these claims. Judges have absolute judicial immunity for their judicial acts in civil actions for damages." ECF No.13 at 5 §3(A) ¶ 2.

a)  The question is whether Mr. Polo is entitled to Injunctive and Declaratory relieve against the Eleventh Judicial Circuit Court, Judge Bernstein, Judge del Rey, and GM Singer for prospective acts.

b)  The U.S. Sup. Ct. in case *Pulliam v. Allen*, 466 US 522 (1984) concluded "that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity. *Pulliam v. Allen*, 466 US 522 at 542.

c)  Moreover, in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the U.S. Sup. Court defined an exception to the Eleventh Amendment. *See* also *Coeur d'Alene*, 521 U.S. at 288, 117 S.Ct. 2028 ("The Young doctrine recognizes that if a state official violates federal law, he is stripped of his official or representative character and may be personally liable for his conduct; the State cannot cloak the officer in its sovereign immunity.")

> Young has been focused on cases in which a ***violation of federal law by a state official is ongoing*** as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the ***relief against the state official directly ends the violation of federal law*** as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation. As we have noted: "***Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law***. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment."

d) *Summit Medical Associates, PC v. Pryor*, 180 F. 3d 1326 (11th Cir. 1999) (quoting *Papasan v. Allain*, 478 U.S. 265, 277-78, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986))

e) In *Pryor* the court held that "the Eleventh Amendment bars suits against state officials in federal court seeking retrospective or compensatory relief, but does not generally prohibit suits seeking only prospective injunctive or declaratory relief."

f) Additionally, the Court in *Pulliam v. Allen*, 466 U.S. 522 (1984) indicated:

> Since the court already had determined that judicial immunity did not extend to injunctive and declaratory relief under § 1983, the court concluded that prospective relief properly had been awarded against petitioner. It therefore affirmed the award of attorney's fees.

> *Id* at 527.

g) Moreover, in *Allen* the court not only acknowledged that Judicial immunity *does not* extend to injunctive and declaratory relief under § 1983, but also ruled that "Congress' intent could hardly be more plain. Judicial immunity is no bar to the award of attorney's fees under [42 U. S. C. § 1988." *Id* at 544].

h) The Eleventh Judicial Circuit Court continues to violate Mr. Polo access to the court by enforcing the multiple unconstitutional orders entered without notice and opportunity to be heard. Moreover, Mr. Polo is back in politics and about start a political campaign where one of his premises will be fighting corruption in the family court. Every day that Mr. Polo refrains to engage in political speech because of fear of retaliation is a day in which Mr. Polo's constitutional rights are being violated by the defendant. Even thought, Polo has now access to file notice of appeals, the clerk of court told him, on November 4, 2021, that Mr. Polo cannot

file any other documents and gave Mr. Polo the telephone number of Judge Del Rey's office for Mr. Polo to call, which Mr. Polo will not do because in the pass Judge Bernstein falsely accused Mr. Polo of being incessantly calling his judicial assistant. Exhibit 3 *at* 5 ¶ 2 L7.

3.     Magistrate Judge states that "Plaintiff alleges in a conclusory fashion that Judges Del Rey and Bernstein lacked jurisdiction to take the actions alleged. *See* [ECF No. 11 at ¶¶ 8], 74]." [ECF No. 13 §A at 5 ¶2].

a)   This relates only to Judge Del Rey only. The line is *relevant* for other reason to show that the injuries are capable of repeating. Mr. Polo was forced to litigate on October 12, 2021, without access to file evidence and notice of filing evidence.

4.     Magistrate Judge finding that "Plaintiff has failed to satisfy the third [prong]. He has an adequate remedy at law: the right to Judge Bernstein, Judge Del Rey, and Judge Singer's Orders to the state appellate courts and thereafter to the Supreme Court of the United States." [ECF No. 13 at 6 ¶2]. That argument also fails for the following reasons:

a)   Plaintiff has stablished the third prong (3): The injunctions and declaratory judgment are only to prevent further damages. No granting an injunction is comparable only with sending an abused person who asks for refuge of the laws, into the hands of her abuser because she can always call the Police. As stated at [ECF No. 11 at ¶¶ 8, 74] Until the day of filing the petition, plaintiff was prevented from filling *anything* in the court docket, now can file only notice of appeal. Every day that passes without Plaintiff having access to the court is an injury that we cannot go back in time to fix. Nevertheless, arguendo that plaintiff could file anything, which is not the case, the more important question is whether it is an irreparable injury the fact that Mr. Polo is compelled to reframe from freely engaging in "core political speech[1] which consisted of speech intended to directly rally public support for fighting judicial corruption in the Miami Dade Family Court System." Plaintiff is getting ready to run for congress once more, and he will have to refrain from engaging in political speech if this court fails to injunct the defendants for prospective violations. *See* [ECF No. 11 at 34 ¶ 193].

---

[1] The concerns of Magistrate Judge about first amendment right will be addressed herein later.

Page **3** of **20**

b) The Supreme Court has answered that question in the affirmative when they stated: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Every day that passes in which Plaintiff is afraid to engage in Political speech and he refrains from engaging in such protected activity, the Plaintiff is suffering violations to his constitutional rights. As previously said, we cannot go back in time to fix that. Same happens with access to the court.

c) Plaintiff has stablished the first prong (1): It is clear from the facts and the supporting case law that Claims I, II, IV, V and VII represent multiple deprivations of Plaintiff's constitutional rights, without due process of law for which plaintiff is asking this court for a protective order.

d) Plaintiff has stablished the second prong (2): It is clear that the violations of constitutional rights are still continuing. As a matter of fact, that is precisely where [ECF No. 11 at ¶¶ 8, 74] becomes relevant. After Mr. Polo filed the petition for preliminary injunction, Mr. Polo was forced to litigate without access to the court on October 12, 2021. Mr. Polo apologize for not entering the date of the event in line 74. Moreover, every minute that passes in which Mr. Polo is afraid to engage and doesn't engage in political speech for fear to retaliation from the State actors is a minute of violation to Mr. Polo's right. There is a serious risk of continuing irreparable injury if the relief is not granted. [ECF No. 13 at 16 ¶ 74]

e) Consequently, it is clear that the Plaintiff can stablish the three prongs in *Wells v. Miller*, No. 15-CV-80412, 2015 WL 12953101.

5. We turn now to whether *Younger* Abstention applies in this case. The Magistrate Judge states that "At any rate, even if Plaintiff could show that he is entitled to declaratory relief, this Court should abstain from granting relief pursuant to *Younger v. Harris*, 401 U.S. 37 (1971)." [ECF No. 13 at 7¶ 1]. Mr. Polo respectfully disagrees. That argument also fails for the following reasons:

a) In *Younger* the Court held that federal courts may not hear the case until the person is convicted or found not guilty of the crime unless the defendant will suffer an irreparable injury that is "both great and immediate."

b) In this case, (1) there is not pending litigation as to the unconstitutionality of the act of the Defendants in state court. The only thing pending is a motion for attorney's fees, which has been maintained to harass Mr. Polo for over three (3) years as stated in the Statement of Facts.

c) Moreover, there are three exceptions to *Younger's* abstention:

    a. Where the prosecution is in bad faith (i.e. the state knows the person to be innocent); or

    b. Where the prosecution is part of some pattern of harassment against an individual; or

    c. Where the law being enforced is utterly and irredeemably unconstitutional, as recognized under *Younger*. *See* also *Dombrowski v. Pfister*, 380 U.S. 479 (1965).

d) The facts presented to this Court clearly shows that the case is being maintained to harass Mr. Polo, there is a clear pattern of harassment against Mr. Polo, and the orders issued by Judge Bernstein and Judge del Rey are unconstitutional.

e) No even under 28 U. S. C. § 2283, this Court prevented from staying a state court proceeding. In *Mitchum v. Foster*, 407 U. S. 225 (1972), where the U.S. Sup. Ct. held that suits brought under 42 U. S. C. § 1983 are **exempt** from the flat ban against the issuance of injunctions directed at state-court proceedings.

f) *See also* the U.S. Sup. Ct. case *Los Angeles v. Lyons*, 461 US 95 (1983) adopting the holding *Mitchum*, and holding that:

> If Lyons has suffered an injury barred by the Federal Constitution, he has a remedy for damages under § 1983. Furthermore, those who deliberately deprive a citizen of his constitutional rights risk conviction under the federal criminal laws.

g) In this case the initial petition establishes that the state court has engaged in multiple violations of Mr. Polo's constitutional right, including but not limited to (1) deprivation of Plaintiff access to the court in repeated occasions without due process of law; (2) deprivation of Mr. Polo's first amendment right through the exercise of abuse of judicial process, to force Mr. Polo to refrain from exercising his right to free speech; (3) deprivation of property interest in the continue enrollment of Mr. Polo in St. Thomas University, (hereinafter "STU") without due

process of law; (4) keeping two motions for attorney's fees open for over 3 years to harass Mr. Polo, (5) depriving Mr. Polo of his right to custody of his children for seven days without due process of law (not included in the petition for lack of time), and the list goes on.

h) As explained before, Mr. Polo is suffering irreparable damages for every day that he is forced to litigate without access to the court, and force to reframe from exercising his right to free speech. Therefore, *Younger* does not apply in this case, but even if the plaintiffs were unable to meet all the exceptions, still *Younger* does not apply to § 1983 causes of action.

6. *Mitchum* and *Lyon* clearly make discussing *Younger* irrelevant, just for the sake of preserving the argument, we turn now to the *Younger's* factors.

a) Factor No. one (1): No argument here. The state proceeding is ongoing.

b) Factor No. two (2): This weighs in favor of Plaintiffs. The Magistrate Judge sees an important interest in the state proceeding, and I agree with her in the sense that the state has in interest in lawful proceedings. It is a well-known concept of law that there cannot be a vested interest in an activity found to be illegal. *United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 29 (2nd Cir. 1972) (finding that one "can have no vested interest in a business activity found to be illegal.") violations of the constitution are illegal acts and even sanctionable with federal imprisonment as stated in *Lyon*. Therefore, the State of Florida cannot have any interest in maintaining a procedure that is illegal or an interest in preventing the federal courts from enforcing the laws of the United States of America (*Young* doctrine applies here). The interest of this Court to safeguard the constitution and the law of the United States is superior to any interest the state may have on litigation.

c) Factor No. three (3): This one weighs in favor of the Plaintiffs, there is not adequate opportunity in the state proceedings to raise constitutional challenges for damages, injunctive, and declaratory relief under § 1983 in family state court. Family courts are not the proper venue to address constitutional damages. Additionally, Mr. Polo is prevented from filing in state court, precisely, to ensure he cannot succeed in State Court.

a) It is clear that requirement in *Younger* are irrelevant in this case. *See also Massachusetts Delivery Ass'n v. Coakley*, 671 F. 3d 33 (1st Cir. 2012) where the court held that:

Even if all these requirements are met, and they have not been here, abstention is still not proper in certain "extraordinary circumstances" or "unusual situations." (Citing *Younger*, 401 U.S. at 53-54, 91 S.Ct. 746).

Additionally, the court said:

The Supreme Court has indicated that a "facially conclusive claim" of ***pre-emption*** is "[p]erhaps" such an exception to the *Younger* doctrine. (Citation omitted). We have held that such a facially conclusive claim is a ***valid exception***.

b) Consequently, Younger should not be taken into consideration for this court to exercise its constitutional power of pre-emption. *Mitchum, Lyon* and *Coakley* clearly support that assertion. Consequently,

7. We now move to Claim No. III. The Magistrate Judge in this section argues that "Plaintiff has Failed to Show Causation," and further states that "Title 42 U.S.C. § 1983 only applies to individuals acting under color of law and the law is unclear regarding whether Judge Bernstein was acting under color of law when he sent the letter." [ECF No. 13 at 9 ¶ 3].

a) The definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 US 299, 326 (1941).

b) Courts usually come to a conclusion that the defendant was a state actor as follows:

To constitute state action, "the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible," and "the party charged with the deprivation must be a person who may fairly be said to be a state actor." Ibid. *"[S]tate employment is generally sufficient to render the defendant a state actor.*" (Citation omitted). It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State.

*West v. Atkins*, 487 US 42 (1988).

c) Judge Bernstein is a state actor who was acting as "the Judge" not as a regular citizen. Regular citizens, do not have the privilege granted by his position, by the constitution, and by the people of the State of Florida, of using the Court's letterhead and a signature block with his credentials as "the Judge." Moreover, Judge Bernstein, as stated in the petition, is the employee of the

State of Florida, and he abused his position by acting in furtherance of the agreement he had with STU's management and other co-conspirators.

d) Moreover, Mr. Bernstein's acts leading to the damages suffered by the Plaintiffs were undertaken with a *clear absence of jurisdiction*."[2] Judges are not entrusted with disciplinary procedures at private educational institutions. Once Judge Bernstein stepped out of his shoes as a judge and stepped into the role of educator, he lost all protection of the total immunity from prosecution granted to judges. Judge Bernstein "was acting under the authority or color of Florida law at the time these claims occurred.

8. Magistrate Judge argues that if there were any "'intervening free, independent, and volitional acts'" between any alleged improper acts by Judge Bernstein and the decision made by St. Thomas, the causal connection is broken." She also raised the question of whether there was "enough to show an affirmative causal connection between Judge Bernstein's letter and Plaintiff's expulsion." These arguments fails as follows:

a) Magistrate Judge is raising an "if" scenario which is speculative in nature because there is not fact in the fact pattern indicating there was an independent intervening force between *(1) Judge Bernstein sending the letter* and *(2) STU's management receiving the letter*. Those are the two important events in which an intervening factor may be relevant. There was no pending investigation or honor proceeding pending against Mr. Polo, and Mr. Polo was four weeks away from graduating. Therefore, what matters, absent a conspiracy that did exist, is any intervening factors between sending the letter and STU's management receiving the letter. Bernstein letter initiated an investigation that had never occur absent Judge Bernstein's letter.

b) Moreover, the fact pattern shows that the decision to expel Mr. Polo was already made even before Judge Bernstein sent the letter, they already had a plant to harm Mr. Polo. The only thing they needed to star the proceeding was the motive *see* [ECF No. 11 at 14 ¶ 58], namely the letter, and Bernstein role in the conspiracy with STU was to provide the letter, which he

---

[2] The Jurisdiction of circuit court is derived from the Florida Constitution, Art. V, § 3(b)(3), Fla. Const., and § 26.012, Fla. Stat. (2020)

provided. Moreover, the school never had a motive to start an honor proceeding against Mr. Polo before Judge Bernstein sent the letter.

c) Furthermore, it is clear that the letter judge Bernstein sent to STU, to facilitate their part of the agreement, was not going to say "please, act according to our plan to expel Mr. Polo." The letter was the excuse to initiate the honor proceeding against Mr. Polo, therefore, it had to be clean of any demonstration of bias, so that STU's management had an excuse to present to the archdioceses of Miami (who owns STU), STU's president or any other party questioning their actions.

d) The evidence, including the letter Mr. Polo filed with this court, was never supposed to fall into the hands of Mr. Polo. Had the letter never fall into Mr. Polo's hands, STU's management, Bernstein and all other co-conspirators would have accomplished their plan without involving Judge Bernstein, and provably even without consequences.

e) STU's management even had Mr. Segarra, the same attorney Mr. Polo accused of having ex parte communication with Judge Bernstein, helping them by providing misleading evidence for STU's management to use it against Mr. Polo. Mr. Polo was an excellent student, and they could only dirty his name by using Judge Bernstein's letter and opposing counsels misleading information, which STU's management used to justify the unconstitutional proceeding.

f) It is clear that Mr. Bernstein was the proximate cause of Mr. Polo's dismissal from law school. Fla. Sup. Ct. uses the following test to determine Proximate cause:

> In determining whether a defendant's conduct proximately caused a plaintiff's injury, courts analyze "whether said injury, given actual causation, was a foreseeable consequence of the danger created by the defendant's negligent act or omission."

> *Ruiz v. Tenet Hialeah Health System*, 260 So. 3d 977 at 982 (Fla. 2018) (citing Stahl v. Metro. Dade Cty., 438 So.2d 14, 21 (Fla. 3d DCA 1983)).

> Instead, the injured party must show that the alleged tortfeasor "substantially caused the specific injury that actually occurred. .... A "harm is `proximate' in a legal sense if prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or omission in question" .... "the question

21-CV-23557

*Polo, et al. V. Eleventh Judicial Circuit Court of Florida, et al.*

*Plaintiff's Objections to Magistrate Judge Report and Recommendations*

of foreseeability as it relates to proximate causation generally must be *left to the factfinder to resolve.*"

Ruiz, 260 So. 3d 977 at 982 (citing McCain v. Fla. Power Corp., 593 So.2d 500, 502 (Fla. 1992)

g) The lower court in *Ruiz* used the same test Mr. Polo used, the "But for Test." "Therefore, a jury could not reasonably find that but for the negligent failure to properly diagnose and treat Mr. Gooding he would not have died." *Id. (quoting Gooding v. University Hospital Building, Inc.*, 445 So.2d 1015 (Fla. 1984)).

h) It was forceable to Judge Bernstein that Mr. Polo was going to suffer damages as result of his actions, because damages to Mr. Polo was part of the plan. Even if there was not a conspiracy, which there was, it was forceable for Judge Bernstein that the result of his acts was going to trigger an honor council inquire, which can have many consequences including expulsion from law school. Bernstein was once a law student, and he knew the possible consequences of his letter. But even if he was not a law student, an attorney, and a judge, with extensive knowledge of the law, any reasonable person knows that sending a letter with a court order where the moral character of a student is being question, and where he is being accused of a crime, the ending results is most likely dismissal from the school. Nevertheless, he knew more, he knew his co-conspirators would make sure of getting Mr. Polo expelled from law school.

i) Moreover, the initial letter the Dean of the school sent to Mr. Polo, identifies only the facts contained in the Order of Recusal as the reason for STU to begin the honor council against Mr. Polo. (*See* attached EXHIBIT 20).

> As Mr. Polo stated in the petition: "But for Judge Bernstein's act of sending the letter to *STU in collusion with STU management*, that unconstitutional proceeding had never taken place, and Mr. Polo had never lost his property interest in his continued enrollment in law school and suffered damages as consequence thereof."
> [ECF No. 11 ¶161]

9. The next question Magistrate Judge raises is whether "§ 1983 claim would not be the proper vehicle, as St. Thomas is a private entity, not a state actor." [ECF No. 13 at 10 ¶ 3] This argument also fails for the following reasons:

a) Here the law is well settled, and Magistrate Judge cited a few of the leading cases. Therefore, there is no need to go too much into details. "Where a private party conspires with state officials to deprive others of constitutional rights, however, the private party is acting under color of state law. *See Tower v. Glover*, 467 U.S. 914, 920 (1984); *Dennis v. Sparks,* 449 US 24 (1980).

b) The facts stated in the petition clearly show a conspiracy. The facts are as follows:

> On or about October 3, 2017, Segarra noticed a hearing for October 24, 2017, which was noticed as a hearing for "Resolution of Competing Orders Submitted by the Parties." EXHIBIT 4. [ECF No. 11 ¶26].

> On *August 23, 2017*, the *day before the hearing*, Mr. Polo saw Mr. Bernstein on the second floor of STU, with multiple members of STU management, *including Dean Lawson and Dean Moore*. [ECF No. 11 ¶27].

> *Dean Lawson*, Mr. Silver, and *Dean Moore* were *acting as agents of Mr. Bernstein*; therefore, they were acting *under Color of State Law when they commenced and maintained* the Honor Council proceeding against Mr. Polo, which was *violative of Due Process for not having an impartial adjudicator*. [ECF No. 11 ¶155].

> Additionally, in executing *the plan* they had to germinate(sic) [terminate] Mr. Polo's property interest without Due Process of Law, Mr. Silver served as the executor, reason why he *brought up Mr. Polo's ideology to provoke the biased vote of the other members of the Honor council*, Dean Lawson Began the Proceeding to *make possible the termination*, and Dean Moore, *engaged in providing misleading information to the panel*. [ECF No. 11 ¶157].

> Mr. Polo objected to the proceeding showing Ms. Lawson that *Mr. Bernstein was acting illegally* and that he had a *personal interest* in the matter. Even though their Honor Code says the Council *shall* (emphasis added) *not be used to resolve personal conflicts*, they *did not care* and continue (sic) with the hearing with the *ultimate interest of no finding the truth, but finding an excuse to terminate Mr. Polo*. [ECF No. 11 ¶148].

> "Dean Lawson, Mr. Silver, and Dean Moore used Mr. Bernstein's *letter as an excuse to just open the proceeding against Mr. Polo*." [ECF No. 11 at 14 ¶58].

> Mr. Bernstein, *maliciously and in a clear absence of all jurisdiction*, sent a letter to Dean Lawson, which contained the false allegations and manipulated facts. Dean Lawson, Mr. Silver, and Dean Moore *needed to proceed with the plan they had to terminate Mr. Polo's* property interest in their continued enrollment. See EXHIBIT 3 [ECF No. 11 at 14 ¶144].

Judge **Bernstein and Ms. Segarra** colluded with STU so that Bernstein was going to provide STU with the needed **false allegations of misconduct**, and Segarra was going to **provide STU with misleading evidence**. [ECF No. 11 at 14 ¶205].

Mr. Polo **was excluded from the hearing** while the Honor Council was taking the testimony of Mr. Juan Carlos Planas, **the attorney for Mr. Polo's political rival Maria Elvira Salazar** [ECF No. 11 ¶147].

Maliciously destroying Mr. Polo's reputation, and preventing Mr. Polo from achieving a Law Degree, no [sic] only **was going to silence Mr. Polo's speech**, but it would have removed **the prestige, and goodwill having a career in law would represent for Polo's career in law**. Therefore, Mr. Planas had an **interest** in terminating Mr. Polo to benefit then candidate Maria Elvira Salazar and State Representative Daniel Perez., who have influenced and influence over and a voice in assignment of State and Federal Grants/Contracts and budget assignments. [ECF No. 11 ¶147].

Upon information and belief, Mr. Polo alleges Mr. Plana had **worked for the Florida Department of Elections** (hereinafter, "FDE,"). [ECF No. 11 at ¶147]

Then **during the same period** in which the school proceeding was happening, the **FDO commenced a proceeding against Mr. Polo** for certifying that a campaign report was correct and later filing a second amended report with the FDO, **which is a normal procedure**. The FDO **tried to get Mr. Polo to incriminate himself with an affidavit they wanted Mr. Polo to sign**. The attorneys at the department **knew that there was no probable cause** to start the proceeding. Nevertheless, **they started the proceeding** by referencing the case to the Florida Elections Commission. The Florida Elections Commission ruled that there was **no probable cause** to continue with the proceeding. [ECF No. 11 at 17 ¶79].

Judge Bernstein and Ms. Segarra **maliciously colluded with STU's** management, for over a year, to finish Mr. Polo's career in law, and STU wrongly terminated Mr. Polo. [ECF No. 11 at 17 ¶79].

**Mr. Segarra,** engaged in providing Dean Lawson, Mr. Silver, and Dean Moore with the evidence they needed to continue with the proceeding. [ECF No. 11 at 15 ¶45].

STU had never terminated a student who was **caught by the Police and indicted for possession of stupefacient with the intent to distribute**. The student was suspended on a temporary basis and then later allowed to continue and complete his career.

STU never terminated a professor who was **_charged and found guilty of Felony Battery_** against another STU employee.

STU never terminated or even initiated an Honor Proceeding against a student who crashed on campus while **_driving under the influence_**, of which then Dean Alfredo Garcia was aware of when he received a call past midnight from Campus security.

c)   It is clear that Mr. Polo's was different than those found guilty of felonies or caught with drugs with the intent of distributing those. Mr. Polo's case was about Judge Bernstein's agreement with STU's management, and their mutual interest in destroying Mr. Polo's and his family financial future. Moreover, contribution to silence Mr. Polo would have generated benefits to STU and all other involved. Therefore, they had to expel Mr. Polo no matter what.

10. The next point Magister Judge raises is whether "Plaintiff has not Pleaded Facts Sufficient to Show a Conspiracy between Judge Bernstein and the Law School." Mr. Polo adopts the facts in 9 herein.

a)   Mr. Polo stated in the petition that "Conspiracy is not discussed as a cause of action herein" because the petition is not against STU, therefore, the STU conspiracy is irrelevant for the effect of getting the injunction. The Magister Judge is right in saying that if non demonstrated in court, the argument of plaintiff against STU will fail. Nevertheless, even when not all facts or causes of actions were listed for the purpose of obtaining the injunctive relief, there are enough facts to show a conspiracy existed. *See* § 9 herein.

b)   The elements of a conspiracy in in a § 1983 action are as follows:

   a.   agreement *or* meeting of the minds to violate constitutional rights.

   b.   each participant in the conspiracy *need not know* the exact details of the plan, but each must at least share the common objective of the conspiracy.

   *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989)

c)   There was an agreement, planning and a meeting of the mind **_to act in concert like they did_**. Moreover, destroying Mr. Polo's and his family's future was going to be convenient for everyone involved as stated in the petition. Therefore, they help each other, to achieve their objective.

d) They all had the same objective, destroying Mr. Polo's and his family financial future. To accomplish this, STU's management went out of their way and violated its own rules to expel Mr. Polo, they intimidated Mr. Polo to silence his political speech, to prevent him from having a law degree and the reputation and goodwill that it represents in politics, they coerced Mr. Polo to drop the charges in state court against Bernstein's co-conspirators, and prevent him from holding federal office.

e) This was planned a year and a half before Mr. Polo was about to finish law school with a Certificate in Tax Law to continue to obtain a LLM in Taxation at Boston University. They were so frivolous and acted so maliciously that they waited until the last minute before Mr. Polo's graduation to proceed to terminate Mr. Polo's career.

f) Even though in § 1983 cases you don't need to prove the elements of acting in furtherance of the conspiracy and damages. It is very obvious that STU's management, acted in furtherance of the agreement by helping Judge Bernstein to destroy Mr. Polo's and his Family's financial future. They all accomplished their objective which are the damages Mr. Polo suffered explained in each cause of action individually.

g) Conspiracy and other causes of action make part of the complaint that will be ultimately filed with this Court.

h) Therefore, there are enough facts as to identify a sequence of events from which 'a retaliatory motive can be inferred.

11. Now we turn to footnote 4 [ECF No. 13 at 12]. "While Judge Del Rey is listed in this claim, Plaintiff does not specify any actions Judge Del Rey took to deprive him of his rights."

a) This statement is true, the Plaintiff failed to specify the actions, but he also adopts the statement of fact, which contains facts clearly showing that Judge Del Rey violated Plaintiff's due process of law by preventing him to get access to the court without due process of law, when she left Mr. Polo without proper legal representation, twice, knowing that Mr. Polo did not have access to file anything in the docket. She even refuse to vacate Judge's Bernstein orders in furtherance of the agreement she had with Judge Bernstein.

12.     We turn now to weather Mr. Polo meets the two last prong to demonstrate a cause of action for First Amendment retaliation.

a)  Magistrate Judge stays that plaintiff "[w]hat Plaintiff has alleged—that he was served, deposed, asked to sign documents, and warned of being held in contempt—are actions that commonly take place during the litigation process, and ones that typically do not deter persons of ordinary firmness from exercising their First Amendment rights."

b)  Those are not the precise claims of the plaintiff. The claims are as follow:

Thereafter, [after Mr. Polo engaged in Political Speech] Judge Bernstein and Ms. Segarra became more aggressive in trying to silence Mr. Polo.

To accomplish their objective of silencing Mr. Polo, Mr. Segarra began to harass Mr. Polo, and Judge Bernstein force Mr. Polo to pay Mr. Segarra, for the harassing.

Judge Bernstein and Ms. Segarra continue to **harass Mr. Polo** by setting a **deposition to harass** Mr. Polo (sic) [,] by sending a process server to repetitively try to serve Mr. Polo with court documents when **Mr. Polo was already under the Court's jurisdiction** and registered to receive E-Filing from the EJC.

Judge Bernstein and Ms. Segarra tried to **put Mr. Polo in Jail**, for filing a motion to recuse despite knowing that Mr. Polo did **not have the requisite intent to be in contempt**.

Judge Bernstein and Ms. Segarra **maliciously colluded with STU**, for **over a year**, to finish Mr. Polo's career in law, and STU **wrongly terminated Mr. Polo**.

Bernstein and Mr. Segarra, tried to **entrap Mr. Polo** to **commit forgery** by sending Ms. Kathia Camacho (the court reporter) to ask Mr. Polo to sign a court report as her. That way they could **put Mr. Polo in Jail and terminate Mr. Polo's custodial right without Due Process of Law**.

Mr. Bernstein **substituted the original Order of Referral** by another judge, which was sending Mr. Polo and Ms. Hernandez to a Coparenting Coordinator to resolve a school registration issue, by one that was **talking about a "history of domestic violence."** Moreover, Mr. Bernstein **never served Mr. Polo** with the Order of Referral and **domestic violence was never an issue in front of Mr. Bernstein**. [that was another violation of due process].

Segarra and Mr. Bernstein had arranged to send Mr. Polo and Ms. Hernandez to a **prearranged Co-Parenting coordinator** who was going to **return a report finding**

Page **15** of **20**

*not in the best interest of Mr. Polo's children to be with Mr. Polo*, based on history of domestic violence.

Judge Bernstein and Ms. Segarra *colluded with STU* so that *Bernstein was going to provide STU with the needed false allegations of misconduct*, and *Segarra was going to provide STU with misleading evidence*.

Then STU *unjustly* made Mr. Polo go through an Honor Code proceeding, in which point *Mr. Polo felt even more intimidated*; therefore, *not only he stopped the political speech, but he also dropped the case in the State Court against other co-conspirators*.

STU brought up Mr. Polo's political views when Mr. Silver stated to Mr. Polo: "There was a post in your political campaign social media account in which you posted a picture depicting a *group of Democrats* in congress dressing in white, on one side, and another *group of Nazis dressing* in white on the opposite side. Did you try to say that we Democrats are all Nazis?"

c)   Moreover, without probable cause, Judge Bernstein and his co-conspirator maliciously removed Mr. Polo's children from him, without a court order, in a day in which Mr. Polo was the legal guardian, without Mr. Polo's consent, and they did not return, or allow Mr. Polo to see his children for 7 days. Judge Bernstein did not hold a hearing in seven day expecting Mr. Polo to do something that would justify removing the children, but Mr. Polo never did so. There are many facts Mr. Polo will list in the complaint that will be filed with this court.

d)   Any person of ordinary firmness would have felt intimidated by those acts knowing that they were made in retaliation for his political speech. Mr. Polo dropped the causes of action against Mr. Bernstein coconspirators and reframe from speaking about the corruption in the family court due to the retaliation he felt, and the fear of losing his children, his freedom, his career in law and destroying his future. Mr. Polo, did and still fears retaliation for his speech and political views.

e)   Moreover, "[w]hether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Osterback v. Kemp*, 300 F. Supp. 2d 1238 (Fla. ND 2003) (quoting *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir.2002), and questions of facts are for the Jury to determine.

f) Mr. Polo begs to defer with Magistrate Judge in regards to acts that "commonly take place during the litigation," The acts described in the petition are malicious acts, Acts that commonly take place during the litigation do not include the actions in which Judge Bernstein engaged with the purpose of damaging Mr. Polo, including but are not limited to:

    a. (1) conspiring with Segarra to take Mr. Polo deposition to harass Mr. Polo and find information about his graduation and application with different state bars, and he forced Mr. Polo to pay legal fees for the harassing of Mr. Segarra; (2) allowing Mr. Segarra to harass Mr. Polo, with process servers serving documents on Mr. Polo when Mr. Polo was already under the jurisdiction of the court; (3) entrapping Mr. Polo to put Mr. Polo in Jail and terminate Mr. Polo's custodial rights without due process; (4) maliciously colluding with STU's management for over a year to get Mr. Polo expelled from law school; (5) trying to entrap Mr. Polo to commit forgery and put him in jail to terminate Mr. Polo's custodial right without Due Process of Law; (6) substituting the original Order of Referral to resolve school registration issues, by one that talks about domestic violence, when domestic violence was not an issue in front of the court, without notice and an opportunity to be heard; (7) pre-arranging for a coparenting coordinator to return a report finding not in the best interest of Mr. Polo's children to be with Mr. Polo, based on history of domestic violence created by judge Bernstein; and (8) providing STU's management with the needed false allegations of misconduct to terminate Mr. Polo's interest in property without due process of law.

g) Therefore, it is clear that Mr. Polo meets the second prong. Any person of ordinary firmness would have felt intimidated and compelled to reframe from conducting political speech against the corruption in the family courts, if he/she had Judge Bernstein's sword on his/her neck every day and he/she had to go to bed without knowing if next day, he/she would see his/her children or if they would be illegally taken away, if he/she would be thrown in jail unjustly, or if he/she would be expelled from the university because of his political speech. Practices only seen in communist countries and dictatorships.

13. Magistrate Judge stays that "Plaintiff has neither alleged facts sufficient to show that his political speech was the *motivating factor behind Judge Bernstein's* actions, nor *identified a*

*sequence of events* from which a retaliatory motive based on Plaintiff's political speech can be inferred"

a) Magistrate Judge errs in asserting that *Eisenberg* requires the plaintiff to prove both, Motivation factor behind the Judge's actions and, in addition to it, a sequence of event from which a retaliatory motive base on plaintiff's political speech can be inferred.

b) The proposition in *Eisenberg* is that to prove a motivation factor behind the officials activities, the plaintiff "must identify a sequence of events from which 'a retaliatory motive can be inferred[,]' notwithstanding other non-retaliatory motives the defendant may harbor" (quoting *Lippman v. City of Miami*, 719 F.Supp.2d 1370, 1374 (S.D.Fla.2010) *see Cain v. Lane*, 857 F. 2d 1139 (7th Cir. 1988) (holding that the plaintiff "must allege a chronology of events from which retaliation may plausibly be inferred."); *see also Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir.1987) (holding that the plaintiff's complaint "set forth a chronology of events from which retaliatory animus on the part of defendants could arguably be inferred" sufficient to overcome a motion to dismiss).

c) Mr. Polo established a clear chronology of events from which retaliation may be plausible inferred. Mr. Polo was a party in a case in which judge Bernstein was the Judge. There is not complaint about being targeted by Judge Bernstein until after Judge Bernstein's appointed Guardian found out that Mr. Polo was republican and with conservative ideology. [ECF No. 11 at 34 ¶192].

d) Even when Mr. Polo was targeted for his political affiliation, it was not until after Mr. Polo engaged in political speech denouncing the corruption in the Family court system that Judge Bernstein decided to retaliate even more and to destroy Mr. Polo's financial, and professional future. To achieve his objective Judge Bernstein engaged in unconstitutional acts, including but not limited to: [ECF No. 11 at 34 ¶192].

   a. (1) conspiring with Segarra to take Mr. Polo deposition to harass Mr. Polo and find information about his graduation and application with different state bars, and he forced Mr. Polo to pay legal fees for the harassing of Mr. Segarra; (2) allowing Mr. Segarra to harass Mr. Polo, with process servers serving documents on Mr. Polo when Mr. Polo

was already under the jurisdiction of the court; (3) entrapping Mr. Polo to put Mr. Polo in Jail and terminate Mr. Polo's custodial rights without due process; (4) maliciously colluding with STU's management for over a year to get Mr. Polo expelled from law school; (5) trying to entrap Mr. Polo to commit forgery and put him in jail to terminate Mr. Polo's custodial right without Due Process of Law; (6)  substituting the original Order of Referral to resolve school registration issues, by one that talks about domestic violence, when domestic violence was not an issue in front of the court,  without notice and an opportunity to be heard; (7) pre-arranging for a coparenting coordinator to return a report finding not in the best interest of Mr. Polo's children to be with Mr. Polo, based on history of domestic violence created by judge Bernstein; and (8) providing STU's management with the needed false allegations of misconduct to terminate Mr. Polo's interest in property without due process of law.

14. Lastly, we turn to Claim VIII. Magistrate Judge argue that (1) "the Eleventh Judicial Circuit is not a "person" subject to liability under 42 U.S.C. § 1983," and (2) that because "Congress has not abrogated Eleventh Amendment immunity and Florida has not waived its immunity, Plaintiff's claim against the Eleventh Judicial Circuit Court of Florida necessarily fails"

a) The first and second proposition are irrelevant to be argued because Claim VIII is a claim under 28 U.S.C. § 1367 (Supplemental jurisdiction) because all the claims arise from a common nucleus of operative facts that are so intertwined that they cannot be reasonably separated.

b) Claim VIII is a state tort claim for which this Court has Supplemental Jurisdiction once original jurisdiction is stablished. The Fla. Sup. Ct. has previously held that: "that § 768.28, when viewed alone, was intended to render the state and its agencies liable for damages for traditional torts under state law, but to exclude such liability for "constitutional torts." Hill v. Dept. of Corrections, 513 So. 2d 129 (Fla. 1987).

### § 3.CONCLUSION

Mr. Polo is coming to this court seeking refuge under the U.S. Constitution, and the Laws of the United States of America to stop the retaliatory actions of the 11th Circuit court and its agents. As shown in these objections to the Magistrate Judge's Report and Recommendations

[ECF No. 13], Magistrate Judge's recommendations are not supported by facts and/or law. Therefore, the plaintiffs are asking this honorable Court to reject the recommendations and issue, *ex parte,* the proposed TRO and an order commanding the ELEVENTH JUDICIAL CIRCUIT COURT to show cause *why a Preliminary Injunction Should Not Issue* against the Eleventh Circuit Court, its agents, attorneys, employees, and lawyers preventing them from continuing proceedings against Mr. Polo until all the disputes of the parties are heard by this court.

### § 4.CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the forgoing objections to the Magistrate Report and Recommendations, are not being served on any of the defendants until this Court issue the proper summons.

By: _____

PLAINTIFF

Frank Polo

9411 Fontainebleau Blvd. Apt 212

Miami, FL. 33172

Phone: 305-901-3360

E-Mail: Frank.Polo@msn.com

# ADDITIONAL EXHIBIT

**EXHIBIT 20**


ST. THOMAS
U N I V E R S I T Y
S C H O O L   O F   L A W

OFFICE OF THE DEAN
Tamara F. Lawson, Dean

February 7, 2019

Mr. Frank Enrique Polo
*Via First Class Mail and Email: fpolo@stu.edu*
9619 Fountaine Blue Blvd., Apt. #317
Miami, FL 33172

Dear Mr. Polo:

It has come to my attention that you, in bad faith, made misrepresentations to Family Court Judge Scott Bernstein in the case captioned, *In re: Merlin Hernandez and Frank Enrique Polo*, case no.: 2012-17787 FC 04 (28). The court's order mentions various violations of court rules, and most specifically alleges "at least two direct misrepresentations:  1) that [Judge Scott Bernstein] had an *ex parte* communication with Mr. Segarra, and 2) that Mr. Polo was a 'member' of the Bar. Each of these misrepresentations constitutes bad faith." The court's order further articulates that you abused the court system by filing repetitive and frivolous motions, as well as interfered with the functioning of the judge's office by incessantly calling the judicial assistant. This conduct reflects adversely on your character and fitness as a law student at St. Thomas University School of Law and therefore justifies immediate action based on our student Honor Code.

Accordingly, I am invoking Sections 1.03(B) & 2.03 of the Honor Code, which states, in pertinent part that: "The Law School Administration may, within its discretion, respond to any misconduct, such as non-academic misconduct, not within the Code's scope. Some misconduct not involving academic dishonesty may render a student unfit for continuation at the Law School and to enter the legal profession; and [a] sanction may be imposed on a probationary or temporary basis."

Therefore, based on this information, and pending the Honor Council's investigation and hearing in your case, you are immediately **suspended** from participation in Law School activities, specifically participation in the **tax clinic** and/or any student organizations, and/or student employment at the Law School or University. You may continue to attend your two classes, Business Associations and Bar Prep Skills II, pending the final determination of the Honor Council in your case. Additionally, you are **required** to immediately amend your application and report this matter to the Florida Bar. Dean Singer is available as a resource for your bar application process.

Sincerely,

Tamara F. Lawson